Campbell *v.* Gladden, Appellant.

Argued October 7, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*Charles G. Sweet,* for appellants.

*Francis H. Patrono,* with him *Patrick C. Derrico,* and *McCloskey, Patrono & McCloskey,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 17, 1955:

On the night of March 12, 1953, David B. Campbell, a lawyer at the Washington County bar and at the time a candidate for the office of Judge of the Court of Common Pleas, was driving his Ford automobile along U. S. Route No. 19 through Strabana Township when, at a point about one mile from Hill Church, his vehicle collided with a tractor truck belonging to J. Herman Gladden and driven by his employee, Stidger Dunn. As a result of the impact Campbell received bodily injuries which immobilized him for several days, after which he resumed campaigning for the office which is a worthy and yearned-for goal of many members of the bar. He never reached the day of election. On April 1, 1953, he died of a heart condition.

The executrix of his estate, Naomi Smith Campbell, brought suit against the defendant Gladden and his driver-employees under the wrongful death and survival acts, recovering verdicts respectively in the sums of $25,000 and $2,312. The defendants filed a motion for judgment n.o.v. which was refused by the Court below and this appeal followed.

The defendants press for reversal mainly on two grounds: (1) that the plaintiff's decedent was guilty of contributory negligence; and (2) that the injuries resulting from the accident were not responsible for his death. In appellate reviews the record is always read in the light (consistent with reason) most favorable to the verdict-winner. In spite of this citation-packed rule, the defendants urge that the transcript of testimony portrays Campbell driving his car into the rear of the defendant's tractor, precipitating the collision which was the basis of the plaintiff's suits. The record does reveal some testimony upon which such an interpretation could lean, but it also contains pages which impart substance, authority, and conclusiveness, in the light of the Gibraltar of the jury's verdict, to the plaintiff's assertion that Campbell was innocent of contributory negligence and that the accident could not have occurred had it not been for the negligence of the defendant's employees.

When Campbell first came into view of the locale which was later to be the scene of the accident, he saw a truck and a tractor parked on the side of the road, pointing in the same direction he was travelling. As developed by other evidence, the truck had broken down and the tractor was preparing to haul it away by means of a connecting chain. No flares were displayed by the defendant drivers as they paused at the wayside because, as one of them explained at the trial, they had hoped to get away before any other vehicle appeared.

Before they could complete the coupling operation, however, Campbell arrived and as he was about to pass by, presumably having space to clear the stationary vehicles, the tractor precipitately backed into the highway, striking the right front fender and wheel of Campbell's automobile, thereby producing the accident from which Campbell proceeded, two and a half weeks later, to his grave.

A State Policeman, called by the defendant, testified that the day after the accident, Campbell said to him: "I saw this tail light or reflector, which, in my vision, was off the road; I followed it until I realized it was a truck, and saw no reflection of headlights from it and assumed it was a parked truck, and I kept on driving, and, assumingly, left enough room to go by. The next thing I knew, I thought I was hit from the side."

When the witness W. C. Hart arrived at the scene of the collision five or ten seconds after the crash, the decedent, who was lying on the road with blood flowing from his nose and mouth, struggled to his feet by seizing hold of the bumper of his car, whereupon Hart asked him what had happened. Campbell replied: "They must have backed out in front of me." The defendants objected to this statement as hearsay and not admissible as part of the res gestae. The fact that the statement was made in answer to a question does not exclude it. We said in *Com. v. Harris*, 351 Pa. 325, 336: "The mere fact that the statement of the victim was in response to a question did not make it involuntary and did not destroy that spontaneity which is the characteristic of a res gestae declaration."

In determining whether a given situation falls within the frame of the res gestae rule, it is always pertinent to inquire: Were the circumstances of the case such as to preclude the possibility of a shrewd and self-calculating answer? In the case at bar would a person

in Campbell's condition as above described be likely to deliberate, reflect, weigh, counterweigh and concoct evidence in anticipation of some possible lawsuit? We have said many times that: "No definite time-limit or distance from the crime or event in issue can be fixed by the Courts to determine what spontaneous utterances are admissible; each case must depend on its own facts and circumstances: Commonwealth v. Gardner, 282 Pa., supra; Commonwealth v. Stallone, 281 Pa. 41, 126 A. 56." (*Com. v. Noble,* 371 Pa. 138, 145.)

We are satisfied that the Trial Judge did not err in admitting Campbell's declaration. Any exclamation, which is uttered before the dust and smoke of the mishap which gave it birth subsides, and while the agony and the hurt of the misfortune is yet unspent, is admissible in evidence as part of the res gestae.

The physical facts confirmed the decedent's statement. Hart noted that although the truck was entirely off the highway, the rear wheels of the tractor "were projecting into the pavement of the highway." Hart testified also that a man was standing at the back of the tractor "working with a chain." It is evident that the driver of the tractor was backing his vehicle so that Liton, the man with the chain, could effect a union between the disabled vehicle and the towing vehicle. In the execution of this maneuver the driver of the tractor unheedingly pushed the rear of his vehicle into the highway just at the moment that Campbell's automobile fatefully arrived at that point.

The "assured clear distance rule" which the defendants attempt to invoke here has no application to the facts since the highway itself was unobstructed when Campbell moved into the area which later became the arena of jeopardy.

The Trial Judge submitted to the jury the specific question: "Did David B. Campbell die as a result of the

injuries received in the accident or from natural causes?" The jury replied: "From injuries received in the accident." We are satisfied that the jury was warranted in this conclusion. In contesting the jury's finding the defendants point to the testimony of Dr. Ramsey wherein he said: "Q. Then I take it from your answer, Doctor, that the recent automobile accident was of no particular significance in this death? A. Well, that is my opinion."

Dr. Ramsey's opinion was controverted by Dr. Carazola who testified: "Q. Doctor, what is your opinion as to the connection, if any, between the death of David Campbell and the injury received in the accident on March 12, 1953? A. In my opinion the cause of death as stated, that is, coronary occlusion, was precipitated by the accident of March 12, 1953. Q. Doctor, will you explain what you mean when you say that the accident precipitated the death? A. I mean that the accident initiated it, or started it, that is, the procedures which eventually led to the coronary occlusion, which was the actual cause of death."

The blow Campbell received was without doubt a violent one. The force of the impact was such that he was dislodged from behind the steering wheel and hurled from the car to the pavement. When Dr. Carazola examined him shortly after the accident he found, in addition to contusions about the head and face, a bruised area on the chest over the heart: "A. He had a bruised area, a reddened area, at that time. Q. What was the location of that area? A. The location was about the level of the fourth and fifth ribs. Q. Could you point on yourself to that location? A. Right here, just at the apex of the heart,—slightly above the apex, at about the fourth and fifth ribs."

The appellant places considerable emphasis on the fact that since Dr. Ramsey and Dr. Carazola were both

plaintiff witnesses and they contradicted each other, their testimony pertaining to the cause of death must be ignored, under the ruling laid down in the case of *Mudano v. Phila. Rapid Transit Co.*, 289 Pa. 51. The *Mudano* case, however, is clearly distinguishable from the one at bar because there the expert witnesses gave opposite opinions while on direct examination. Here, Dr. Ramsey made no reference in his testimony in chief to causal relationship between the accident and Campbell's death. He was called by the plaintiff to testify only as to the result of the autopsy he had performed on the deceased. The testimony with regard to non-tortious causation of death was brought out on cross-examination and went beyond the scope of the direct examination. The plaintiff, therefore, cannot be bound by Dr. Ramsey's testimony insofar as it pertains to the bridge or lack thereof between the original trespass and the culminating demise of the victim of the trespass.

The identical question raised by the appellant here was resolved in the case of *Burnets v. Scranton Coal Company*, 119 Pa. Superior Ct. 149. There the defendant company contended that the testimony of the coroner Dr. Bartecchi called by the claimant (in a Workmen's Compensation case) was in disagreement with that of a Dr. Ferguson called by the Workmen's Compensation Board and therefore the claimant had failed to sustain the burden of proof. The Superior Court held that the testimony of Dr. Bartecchi was not binding on the claimant: "He (Dr. Bartecchi) was not asked by the claimant to express his opinion as to any causal relation between the accident and the kidney condition and as was said in Borovski v. P. & R. C. & I. Co., 101 Pa. Superior Ct. 304, 307: 'The defendant should have confined the cross-examination to the same matters as were testified by the witness in chief and if he

wished him to give his opinion as an expert he should have called him as his witness.' Under these circumstances, the rule of Mudano v. P. R. T., supra, does not apply."

The appellants argue further that although Dr. Carazola in the initial stage of his examination tied Campbell's accident and his death together, he later loosened the knot and admitted that other factors may have contributed to the fatality. In cross-examination he testified: "Q. Now I realize the blow on the chest did not do him any good, but is it not reasonably possible that David Campbell died of a coronary occlusion as the result of coronary artery disease without the precipitating . . . without the causal factor of that particular blow? Isn't that possible? A. Just as possible as it is for him to have died as a result of the blow."

On this answer defendants' counsel constructs the supposition that Dr. Carazola negatived his previous testimony and that the cause of death was thus cast into the dark pit of guesswork. However, the intent of Carazola's testimony must be distilled from all his words and not from any particular few torn out of context. In his cross-examination of the doctor, defendants' counsel sought to create the inference that the hypothesis of Campbell's death from natural causes was equally possible with death resulting from trauma, but Dr. Carazola refused to sanction such an inference: "Q. Therefore, if it is more or less equally possible that Mr. Campbell's death could have occurred without the blow, you do not want to state, or you will not state, that the blow was, therefore, the sole efficient cause of his death, was it? A. In my answer *I did not wish to imply it was equally as possible.* I meant to say it was just as possible for death to have occurred from the blow, with all these resulting factors, as for the death

to have taken place with the various procedures which you have just described. I meant to say I was not giving any percentages in this thing." (Emphasis supplied.)

The uncertainties in life are infinite. No one can with infallible prescience rule out floods, earthquakes, and heart attacks as possibilities, but there is no reason why with the material of demonstrable realities one cannot build assured probabilities—and that is what Dr. Carazola did. David Campbell was only 48 years of age at the time of the accident. He lived an entirely normal life. He was happily married, fathered four children, actively practised his profession, played golf, and was devoted to music. He had never been ill before. It would be more of a wrench to the regularity of the law of cause and effect to assume that a healthy man, with no previously outward manifestation of heart disease, should suddenly fall over dead from natural causes, than that he should succumb as the result of a severe blow administered to the casing enclosing the delicate instrument of his heart.

In the case of *Mosser v. Mount Union Borough,* 158 Pa. Superior Ct. 277, a recovery was allowed where the claimant's decedent had suffered a heart attack five years before the accident involved, and where his physician had advised him to resign from the fire department which employed him. The Superior Court said: "The physician in his testimony frankly admitted the possibility that there may not have been a relation between Mosser's activity at the fire and his death. But, again and again, he gave it as his professional opinion that Mosser's exertion, and inhaling of dense smoke, aggravated his heart condition and precipitated the occlusion. In his opinion the fact that the fatal attack did not occur immediately at the scene of the fire was not controlling, regardless of whether Mosser was exposed

to carbon monoxide gas." The fact that the *Mosser* case was one involving workmen's compensation does not detract from the force of the reasoning employed therein with regard to the sufficiency of medical evidence. (*Nestor v. George,* 354 Pa. 19, 24.)

Judgments affirmed.