398 A.2d 948

**COMMONWEALTH of Pennsylvania**

v.

**Richard SMITH, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 12, 1979.

Decided March 14, 1979.

■ 73

Charlotte A. Nichols, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Marrianne Cox, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On August 2, 1976, Richard Smith, appellant, was convicted in a nonjury trial[1] of voluntary manslaughter, assault and battery, carrying a firearm on a public street, and carrying a firearm without a license. Post-verdict motions were denied, and Smith was sentenced to ten years probation on the voluntary manslaughter conviction. A sentence of two days less than one year to one day less than two years was imposed on the weapons conviction, and sentence was suspended on the assault and battery conviction. This appeal is from the order imposing ten years probation on the voluntary manslaughter conviction.[2]

The sole issue is whether the evidence presented at trial is sufficient to support the verdict of voluntary manslaughter or whether, on the contrary, it establishes the killing was committed in self-defense.

■ In evaluating the sufficiency of the evidence, the test is whether, viewing the entire record in the light most favorable to the Commonwealth and drawing all reasonable

1. Prior to trial, the Commonwealth certified to the court that the homicide rose no higher than murder of the second degree. Since the incident occurred on May 30, 1973, the statute defining murder of the second degree is the Act of June 24, 1939, P.L. 872, § 701, as amended by the Act of Dec. 1, 1959, P.L. 1621, § 1. Appendix to 18 Pa.C.S.A. § 101 *et seq.* at Former Title 18 P.S. § 4701. This statute was repealed and replaced by the Crimes Code, 18 Pa.C.S.A. § 2502 (1973), as amended by 18 Pa.C.S.A. § 2502 (1978–79 Supp.).

2. Smith has failed to file an appeal from the judgments of sentence imposed on the firearms convictions and the assault and battery conviction.

inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Santiago*, 476 Pa. 340, 382 A.2d 1200 (1978); *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976); *Commonwealth v. Brown*, 467 Pa. 388, 357 A.2d 147 (1976). Furthermore, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part, or none of the evidence. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068 (1978); *Commonwealth v. London*, 461 Pa. 566, 337 A.2d 549 (1975). Viewed in this light, the instant record reveals the following:

On the evening of May 30, 1973, Smith went to the apartment of his estranged common law wife, Doris Young. At the time, Young, her boyfriend Dennis Dorsey, her son, and her brother were present in the apartment. Smith knocked on the apartment door and requested to talk with Young. Young recognized Smith's voice and, without opening the door, responded she was leaving by the back door to talk to him. Dorsey urged Young not to leave the apartment and, in vile language, refused Smith admittance to the apartment. Momentarily, Smith kicked in a panel of the door and fired three or four gun shots into the apartment. One of the shots struck Dorsey causing a fatal wound. After the shooting ceased, Young's brother exited the apartment and called the police. Smith then entered the apartment and struck Young on the head with his gun. Young subsequently required two or three sutures as treatment for the head wound which resulted from the impact of the gun. Shortly after striking Young, Smith exited the apartment.

At the time of the shooting, the victim also had a gun in his hand. Dorsey held the gun at his side as he talked to Smith through the closed door and did not directly point the gun at anyone. Also, he did not fire the gun.[3] After Dorsey

---

3. Young and her brother, Kenny Echols, testified at trial. Young indicated she did not know whether Dorsey fired any shots. How-

was shot, Young took Dorsey's gun and hid it in a pillow case on a bed in the bedroom. She did not unload the gun, nor did she dispose of any spent bullet casings from Dorsey's gun which would have been lying on the floor of the apartment if it had been fired.

At approximately 9:30 p. m., information concerning the shooting was broadcast over the Philadelphia police radio system. Approximately ten minutes later, Smith was apprehended while operating an automobile. When apprehended, Smith was accompanied by four children who were seated in the rear of the automobile. A police officer asked the oldest child "if his father had a gun." In response to this question, the child lifted his own shirt and displayed a gun tucked in his waist band. The gun was a .38 caliber revolver which contained two live rounds and four spent bullet casings.

At approximately 10:35 p. m., police officers arrived at Young's apartment and conducted a search of the interior and exterior of the premises. A .25 caliber automatic pistol was found on a bed in the bedroom. The gun was fully loaded and in a cocked position. The police also discovered two spent bullets in the interior of the apartment. But, the search by the police failed to uncover any spent bullet casings.

Subsequently, a firearms examiner employed by the Philadelphia Police Ballistics Laboratory conducted an examination of the .38 caliber revolver, the .25 caliber automatic pistol, and other physical evidence involved in this case. The results of this examination were that the two spent bullets discovered in the interior of the apartment were .38 caliber projectiles; that the bullet removed from the victim[4] was a .38 caliber projectile; that the .38 caliber revolver con-

ever, Echols testified that, although, "[w]hen the panel was kicked in, all [he saw was] white flashes," to the best of his knowledge, he did not believe Dorsey shot his gun.

**4.** At trial, the Commonwealth established the bullet removed from Dorsey's body by the medical examiner was submitted to the ballistics laboratory for examination.

tained two live rounds and four spent bullet casings; that the .25 caliber automatic pistol, if fired, would automatically eject spent bullet casings; and, that the .25 caliber automatic pistol was fired eight to ten hours prior to the examination.[5]

Smith took the stand in his own defense. He testified that he drove an automobile to Young's apartment; that four children occupied the rear seat of the automobile; that he went to the apartment for the purpose of returning their two children to Young; that he took the loaded .38 caliber revolver used to kill Dorsey out of the trunk and concealed it in a paper bag; that the .38 caliber revolver belonged to one of Young's brothers; that he approached the apartment with the intention of exchanging the .38 caliber revolver for some personal items taken from his home by Young's brothers; that, after his key to the apartment would not turn, he knocked on the door and identified himself; that, in vile language, Dorsey told him to leave; that he then angrily kicked in a panel of the door; that, immediately, he heard gun shots from within the apartment and saw Dorsey with a gun in his hand; that he took the .38 caliber revolver out of the paper bag and, in fear of his safety, fired the gun into the apartment; that, after the shooting ceased, the door opened and Young's brother exited the apartment; and, that Young ran into him at the entrance to the apartment and he hit her with his gun or fist.

To establish self-defense, the following elements must be shown: (1) the slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing; (2) the slayer must have reasonably believed that he was in imminent danger of death, great bodily harm or some felony, and that there was a necessity to kill in order to save himself therefrom; and, (3) the slayer must not have violated any duty to retreat or avoid the

5. The firearms examiner could not pinpoint the exact time of the examination. However, he testified work was probably done shortly after the gun was received. The .25 caliber automatic pistol was received by the ballistics laboratory at 2:32 a. m. on May 31, 1973. The shooting occurred shortly before 9:30 p. m. on May 30, 1973.

danger. *Commonwealth v. Lowe*, 460 Pa. 357, 333 A.2d 765 (1975); *Commonwealth v. Johnston*, 438 Pa. 485, 263 A.2d 376 (1970).

■ Instantly, the trial court found Smith was "the aggressor, and . . . continued to be until the time of the death of [Dorsey]." Clearly, the evidence presented by the Commonwealth supports such a finding. Thus, as viewed by the trial court, the Commonwealth evidence disproves the existence of one of the necessary elements to a valid claim of self-defense. Accordingly, we conclude the trial court was justified in ruling Smith was guilty of voluntary manslaughter.

Order affirmed.