485 A.2d 776

**COMMONWEALTH of Pennsylvania**

v.

**Cornell GALLOWAY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 19, 1984.

Filed Nov. 23, 1984.

228

Penn B. Glazier, Lancaster, for appellant.

Joseph C. Madenspacher, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

Before SPAETH, President Judge, and ROWLEY and BECK, JJ.

SPAETH, President Judge:

This is an appeal from judgment of sentence for second-degree murder. Appellant raises twenty issues on appeal. The trial court's opinion adequately addresses issues I–IV, VI, VIII–XIV, and XVI–XIX.[1] Consequently, we address only the remaining issues. Of these, issues V and VII, which concern the admissibility of certain hearsay evidence,

---

1. This numbering corresponds to that in appellant's Statement of Questions Involved. Brief for Appellant at 3–8.

and issue XX, which concerns the propriety of appellant's sentence, are without merit. Issue XV concerns appellant's right to a charge on "unreasonable belief" voluntary manslaughter. The law on this issue has changed since appellant's trial and the trial court's opinion. *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983). We therefore remand for further consideration in light of *Carter*.

On the morning of May 30, 1971, appellant went to his wife's apartment, where she gave him his .38 caliber pistol and six bullets, which she had taken with her when she and appellant separated. Later, about 4:00 p.m., appellant returned to the apartment with George Quinn, a friend. Appellant and his wife began arguing. When appellant asked his wife who had helped her move into the apartment, she named three persons, one of them Bobby Lee Jones. Appellant told her to telephone Jones. At first she would not, and they exchanged blows. At one point appellant's wife fell, and Quinn pulled appellant from her. According to the wife's statement to the police, appellant told her that he "was tired of these young punks trying to act like men. If they wanted to act like men he would treat them like men," N.T. 114–15, and, further, that she was going to "get it after he took care of Bobby," N.T. 121, but she "could get it first if [she] wanted it that way," *id.* In the end, she called Jones at the apartment of his girlfriend Shirley Johnson, in the building next door, and asked him to come to her apartment because appellant wanted to speak with him. When Jones entered the apartment, appellant punched him, and they started fighting. Appellant's wife left the apartment through the bedroom window and ran to Shirley Johnson's apartment, where she asked Johnson to call the police. Various neighbors testified to hearing shots coming from appellant's wife's apartment, and identified appellant and Quinn as the two men leaving the apartment. Appellant was said to have covered his face with a raincoat. Jones was found minutes later on the floor of the apartment. He died of two .38 caliber bullet wounds to the head and chest. Quinn was taken into custody the same day;

appellant was finally arrested in Pittsburgh on July 14, 1971.

Appellant's issue V concerns the following testimony by his wife on direct examination:

Q. You ran over to Shirley Ann's and what did you tell her?

A. I told her to call the cops because Cornell [appellant] and Bobby [Lee Jones] were fighting.

Q. Is that what you told Shirley—

\* \* \* \* \* \*

THE WITNESS: I ran up the steps. I don't know if I had to open the door or Shirley Ann opened the door, if I banged or whatever but anyway I told her to call the cops. I don't know what exactly I said. I told her to call the cops because they were fighting.

BY MR. RANCK [the District Attorney]:

Q. Have you looked at the statement to refresh your recollection?

A. I told her Cornell was going to shoot Bobby.

N.T. 123–124.

Defense counsel objected that this testimony was inadmissible as hearsay and an opinion, N.T. 125, and moved for a mistrial. The trial court ruled that the statement was admissible as an excited utterance, and denied the motion for a mistrial. N.T. 127.

When evidence is challenged as hearsay, the first inquiry should be whether in fact it is hearsay. If it is, the next inquiry is whether it is admissible as within an exception to the rule against hearsay evidence.

Here, appellant's wife testified that she remembered making a certain statement to Shirley Johnson. Arguably, this testimony was not hearsay: Appellant's wife was on the stand, under oath, and subject to cross-examination and the jury's observation of her demeanor. Her testimony that she remembered *doing* something—going to Johnson's apartment—was not hearsay. Why should her testimony that she remembered *saying* something be any different?

Nevertheless, "the traditional view ha[s] been that a prior statement of a witness is hearsay if offered to prove the happening of matters asserted therein," McCormick on Evidence 744 (3d ed. 1984), and while "[t]his position has increasingly come under attack in recent years on both logical and practical grounds," *id.*, it appears to be the law in Pennsylvania. *See Commonwealth v. Waller,* 498 Pa. 33, 39 n. 2, 444 A.2d 653, 656 n. 2 (1982) (prior inconsistent statement of witness not admissible as substantive evidence); *Reichman v. Wallach,* 306 Pa.Super. 177, 452 A.2d 501 (1982) (plaintiff's testimony as to what physician said on telephone hearsay; not rendered admissible because physician testified). This case is not the occasion to re-examine that law, for the Commonwealth does not argue that the statement was not hearsay, but it is appropriate to note that the hearsay with which we are here concerned is by its nature subject to being tested for reliability with more confidence than are many other sorts of hearsay. With this in mind, we may turn to our next inquiry—whether, although hearsay, the wife's prior statement was admissible as within an exception to the rule against hearsay evidence.

 As indicated, the trial court ruled that the wife's statement was within the excited utterance exception. To come within this exception the statement must be

a spontaneous declaration by a person whose mind has been suddenly made subject to an over-powering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Allen v. Mack,* 345 Pa. 407, 410, 28 A.2d 783, 784 (1942). *And see Commonwealth v. Pronkoskie,* 477 Pa. 132, 383 A.2d 858 (1978); *Commonwealth v. Cooley,* 465 Pa. 35, 348 A.2d 103 (1975). Appellant does not argue that his wife's statement was not "suddenly made subject to an over-pow-

ering emotion caused by some unexpected and shocking occurrence." His wife's own testimony, and that of Shirley Johnson, Detective Simms and Captain Henry, established that she was bordering on hysteria, N.T. 80, very nervous and quite upset, N.T. 165, frightened and angry, N.T. 80, 135, 245. Nor does he argue that the statement was not made "so near the occurrence both in time and place" as to exclude the possibility of its being reflective rather than excited. Appellant's wife ran directly to Johnson's apartment, where she made the statement, and the statement related to, and arose out of, the exciting event. What appellant does argue is that the statement should not have been admitted because his wife did not perceive the event about which she spoke.

■ It is of course fundamental that before a witness may testify to having perceived an event, it must appear that the witness had the opportunity to, and did in fact, perceive it. McCormick, *supra* at 23. And this principle is equally applicable to the declarant who is quoted by a witness testifying to hearsay. *Id.* Attention must be paid, however, to just what it is that the witness, or declarant, must have perceived. If the witness says, "I saw X," and it appears that the witness could only have seen Y, then the witness is incompetent to testify to having seen X. But this abstract statement assumes that X and Y are different. Attention to the facts, that is, to the entire context of the witness's testimony as shown by all the evidence, may show that X and Y are related in such a way that one who perceived Y may be said to have been able to perceive X.

The necessity of considering the relationship between what the witness testifies to having seen (X) and what the witness could have seen (Y) is implicitly recognized in *Allen v. Mack, supra*. There, after stating that it must appear that "[the declarant] has just participated in or closely witnessed," *i.e.*, must have perceived, the exciting event, the Court goes on to say that the declarant's statement must "[have been] made in reference *to some phase* of that occurrence which he perceived." 345 Pa. at 410, 28 A.2d at

784 (emphasis added). The point is more explicitly recognized in *Commonwealth v. Pronkoskie, supra,* 477 Pa. at 139 n. 6, 383 A.2d at 861 n. 6, where the Court quoted this passage from McCormick on Evidence, 707–08 (2d ed. 1972):

> Must the declarant meet the tests of competency for a witness? In a modified manner the requirement that a witness have had an opportunity to observe that to which he testifies is applied. Direct proof is not necessary; if the circumstances appear consistent with opportunity by the declarant, this is sufficient. If there is doubt the question is for the jury. Especially in cases where the declaration is of low probative value, however, it is usually held inadmissible if there is no reasonable suggestion that the declarant had an opportunity to observe.

(Footnotes omitted.) [2]

Various cases illustrate situations where the evidence was not sufficient to permit a finding that the declarant could have seen what the excited utterance referred to. In *Carney v. Pennsylvania R.R. Co.,* 428 Pa. 489, 240 A.2d 71 (1968) (plurality opinion), it was held error to admit a statement by an unidentified bystander where it would be "mere speculation and surmise ... whether or not the declarant ... actually perceived the engine coming out fast with no lights on it." *Id.,* 428 Pa. at 495, 240 A.2d at 74. And where the defendant in a personal injury action did not make an offer of proof as to what the two declarants actually said to the police officer at the scene and did not establish that the declarants had seen the accident, the statements were not admissible. *Williamson v. Philadelphia Transp. Co.,* 244 Pa.Super. 492, 368 A.2d 1292 (1976). In *Commonwealth v. Noble,* 371 Pa. 138, 88 A.2d 760 (1952), there was no evidence to show that the child declarant was awake during the attack on her father; the statement was also made after too much time had passed for it to be spontaneous.

2. This statement is repeated in the current edition of McCormick, at 858.

■ In the present case, if the declarant's—appellant's wife's—statement had been, "I told her Cornell *had just shot* Bobby," then appellant's objection to the statement would be well taken. For the evidence is that his wife did not see the shooting; she had left her apartment and gone to Shirley Johnson's next door. Decisions such as *Carney, Williamson,* and *Noble* would therefore require exclusion of her statement. However, the wife's statement was, "I told her Cornell *was going to shoot* Bobby," and when this statement is put in the context of all the evidence, we think it was closely enough related to what the wife had perceived to make her a competent declarant. Specifically, the wife knew, on the basis of her own perceptions, that earlier that day she had given appellant his pistol and six bullets; that she and appellant had been quarreling in her apartment, appellant saying that he was going to "[take] care of Bobby"; and that when Bobby came to the apartment, appellant punched him and the two men started fighting. On this record, we conclude that the trial judge was entitled to regard the wife's statement as "made in reference to some phase of that occurrence which [s]he perceived," *Allen v. Mack, supra,* and, therefore, to admit it as an excited utterance.

This conclusion, however, depends upon an understanding of the wife's statement, which we should state explicitly. Suppose that the wife's statement to Shirley Johnson had been "Cornell and Bobby are fighting and Cornell says he's going to get Bobby." Plainly, such a statement would be competent as based on the wife's perception. In terms of the abstract example supposed earlier, X (the statement) and Y (the perception) would be identical, the one mirroring the other. An inherent feature of an excited statement, however, is that precisely because it *is* excited, such exact identity, or mirroring, may not, and often if not usually will not, occur. It is in recognition of this fact that *Allen* countenances "reference to some phase" of the event perceived, and McCormick says that "the requirement that a witness have had an opportunity to observe that to which he

testifies" should be applied to a declarant such as appellant's wife "[i]n a modified manner." In concluding, as we have, that the wife's statement was "made in reference to some phase of that occurence which [s]he perceived," we have understood the wife's statement as a "shorthand," or compressed, account of what she had just perceived.

We have no hesitancy in so understanding the wife's statement. A full account would have been: "Cornell and Bobby are fighting. Cornell says he's going to get Bobby. Since I know he's got a gun, I understand him to mean he's going to shoot Bobby." Under the pressure of her excitement, the wife simply omitted the preliminaries, proceeding directly to the conclusion, "Cornell is going to shoot Bobby." Nevertheless, the fact that the wife did express herself in this manner implicates the opinion evidence rule, and therefore some further discussion is required.

 The basis of the opinion evidence rule, broadly stated, is that opinion testimony by a lay witness, as distinguished from an expert witness, should be excluded because witnesses should give the facts—tell what they perceived— and not their opinions. However, as many courts and commentators have had occasion to point out, there is no clear line between a "fact" and an "opinion." *See Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978) (collecting authorities); *and see* McCormick, *supra* at 26–32. Accordingly, the trial court has considerable discretion in ruling upon whether testimony is "fact" or "opinion" testimony, and if "opinion," whether it should be admitted or excluded. *Lewis v. Mellor, supra*, 259 Pa.Superior Ct. at 515, 393 A.2d at 944; McCormick, *supra* at 27. This latitude is particularly appropriate to a ruling on the admissibility of an excited utterance, for someone who is excited is especially likely to speak in conclusory terms. In such a case, therefore, the opinion rule "should be applied sparingly, if at all ...." McCormick, *supra* at 858.

 In most of its aspects, the wife's statement was not an opinion, but rather, as just discussed, a shorthand de-

scription of what she had just perceived. The statement did include some element of opinion in that it expressed the wife's conclusion regarding what would be the outcome of the fight. However, this did not require exclusion of the statement. Rather, several factors supported its admission. The wife had personal knowledge of the facts upon which she based her conclusion. Her testimony, including her conclusion, was rationally based upon that knowledge. And the expression of her conclusion could in no way mislead or confuse the jury, for the basis of it was plain on its face, and could be made still more plain by cross-examination.

In these circumstances, the statement would be admissible in a federal court, *see* Fed.R.Evid. 701, and the editors of McCormick, *supra,* have concluded from their review of the cases that in most state courts "the actual practice in the trial of cases is becoming, if indeed it has not always been, far more liberal than the older formulas . . . ." *Id.* at 28. *And see Lewis v. Mellor, supra. See also Campbell v. Gladden,* 383 Pa. 144, 118 A.2d 133 (1955) (victim's statement, "they must have backed out in front of me," admissible; confirmed by physical facts). *Cf. Commonwealth v. Coleman,* 458 Pa. 112, 326 A.2d 387 (1974) (victim's statements to her mother on telephone, five minutes before her death, that defendant would not let her leave the apartment and that he was going to kill her admissible as present sense impression). We therefore conclude that the trial court did not abuse its discretion in admitting the statement, and, accordingly, did not err in refusing appellant's motion for a mistrial.

This case is distinguishable from *Commonwealth v. Fugmann,* 330 Pa. 4, 198 A. 99 (1938). There, one of the victims opened a letter bomb, and after he had been seriously injured by the explosion, told his wife, "Fugmann done this." *Id.,* 330 Pa. at 6, 198 A. at 102. The statement was held inadmissible as mere conjecture since the basis for the declarant's opinion was not apparent:

Utterances relating to some distinct prior circumstance cannot be received. Maloney's exclamation must have

been a conclusion from something that had taken place between him and Fugmann some time before. As Wigmore says (Vol. 3, sec. 1750, page 751): "The [spontaneous] utterance must relate to the circumstances of the occurrence preceding it." Maloney's utterance—so far as it involved Fugmann—did not relate to the circumstance of the occurrence (the explosion) which preceded it. It related to something which had preceded the explosion. (See *Agassiz v. Tramway Co.*, 21 W.R. 199.)

*Id.*, 330 Pa. at 16, 198 A. at 106.

Here, in contrast, it is apparent that the wife's statement did rationally " 'relate to the circumstances of the occurrence preceding it.' " From all that appeared, Maloney's statement blaming Fugmann may have been based on something (who knew what) that someone (unidentified) had told him. Appellant's wife's statement, however, was caused by, and related to, only what she herself had just seen.

■ Appellant's issue VII concerns testimony by Shirley Johnson that appellant's wife came running to her apartment and said:

A. Shirley Ann, call the cops, Bobby and Cornell are fighting and he is going to either shoot me or kill me, I don't remember exactly what words she used, and she left.

N.T. 167.

It should be apparent from the foregoing discussion, without more, that in admitting this testimony the trial court did not abuse its discretion.

Appellant's issue XV concerns the trial court's refusal to grant his requested point for charge that "[i]f you believe that the Defendant acted out of a fear for his life, even if that fear was totally unreasonable, then this would be voluntary manslaughter and not murder of the second degree." The trial court held in its opinion that it had adequately charged the jury on this point when it discussed fear as one of the emotions included in "passion" as an element of "heat of passion" voluntary manslaughter. Slip op. at 15–16. We are not persuaded by this reasoning, for

"unreasonable belief" voluntary manslaughter is not the same as "heat of passion" voluntary manslaughter.[3] Both theories of voluntary manslaughter have the common element of an absence of malice. *Commonwealth v. Cain*, 484 Pa. 240, 398 A.2d 1359 (1979). But the defendant's lack of malice appears in different ways.

 Heat of passion voluntary manslaughter requires that the defendant acted as a result of serious provocation. Whether the provocation was sufficient to support the defense of voluntary manslaughter is determined by an objective standard—whether a reasonable man, confronted by the same series of events, would become impassioned to

**3.** The relevant statutory sections are:

 **18 Pa.C.S. § 2503. Voluntary manslaughter**

 **(a) General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

 (1) the individual killed; or

 (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

 **(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

 and 18 Pa.C.S. § 505. **Use of force in self-protection**

 **(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

 **(b) Limitations on justifying necessity for use of force.**—

 * * * * * *

 (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

 (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

 (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take, . . . .

the extent that his mind was incapable of cool reflection. *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972). "Passion" includes any emotions of the mind that render it incapable of reflection, such as anger, rage, sudden resentment or terror. *Commonwealth v. Harris*, 472 Pa. 406, 372 A.2d 757 (1977). Once it is found that the defendant was confronted with sufficient provocation, the focus shifts to the defendant's response: did the defendant actually act in the heat of passion when he committed the homicide; did the provocation directly lead to the killing of the person responsible for the provocation, or was the individual killed negligently or accidently in the course of the defendant's endeavor to kill his provoker; and was there insufficient "cooling time," thus preventing a reasonable man from regaining his capacity to reflect. *See Commonwealth v. Whitfield*, 475 Pa. 297, 380 A.2d 362 (1977); *Commonwealth v. McCusker, supra.*

 Unreasonable belief voluntary manslaughter requires that the defendant have the subjective belief that the killing is justified. For a person to have justifiably used deadly force in defense of himself, three factors must be found to have existed:

First, the actor must have reasonably believed himself to be in imminent danger of death or serious bodily harm, and that it was necessary to use deadly force against the victim to prevent such harm. Second, the actor must have been free from fault in provoking or continuing the difficulty which resulted in the slaying. Third, the actor must have violated no duty to retreat.

*Commonwealth v. Brown*, 491 Pa. 507, 512, 421 A.2d 660, 662 (1980) (citations omitted).

If the justification of self-defense has not been found, a killing may be voluntary manslaughter if the defendant actually believed that the killing was necessary in self-defense and the killing was committed pursuant to that belief. *Commonwealth v. Nau*, 473 Pa. 1, 373 A.2d 449 (1977). When any one of the three requirements for the use of deadly force in self-defense is not made out, a conviction for

voluntary manslaughter may result. *See Commonwealth v. Arce,* 273 Pa.Super. 80, 416 A.2d 1098 (1979) (use of knife not reasonable where no weapon directed at defendant); *Commonwealth v. Smith,* 484 Pa. 71, 398 A.2d 948 (1979) (defendant was aggressor where evidence showed that he kicked in door panel and fired shots into home); *Commonwealth v. White,* 492 Pa. 489, 424 A.2d 1296 (1981) (jury could have found violation of duty to retreat where decedent let defendant get up after fight, defendant retrieved gun from car, and shot decedent).

Unreasonable belief voluntary manslaughter, therefore, does not entail a finding that serious provocation caused sudden passion, with "passion" being interpreted as fear. A person who commits heat of passion voluntary manslaughter must not have been able to think clearly enough to control his actions as a result of an objectively serious provocation. A person who commits unreasonable belief voluntary manslaughter may hold his mistaken belief about the necessity for self-defense without being subject to the strong emotion of sudden passion, or may be mistaken because he was the aggressor or violated a duty to retreat. While it is possible to conceive of situations where both theories of voluntary manslaughter are applicable, they are not coextensive. The Pennsylvania Standard Jury Instructions contain separate instructions for heat of passion voluntary manslaughter and unreasonable belief voluntary manslaughter.[4] The trial court's instruction was substantially the same as the proposed instruction on heat of passion voluntary manslaughter, N.T. 267–268, but the court gave no additional instruction on unreasonable belief voluntary manslaughter.

■ However, the trial court's refusal of appellant's point for charge on unreasonable belief voluntary manslaughter was not error unless appellant was entitled to

**4.** *See* Pennsylvania Standard Jury Instructions, 15.2503A (Crim) Voluntary Manslaughter—Serious Provocation (As a Lesser Included Offense of Murder), pp. 226–229; and 15.2503B (Crim) Voluntary Manslaughter—Unreasonable Belief (As a Lesser Included Offense of Murder), pp. 230–231. (Subcommittee Draft—February 8, 1975).

such an instruction because unreasonable belief voluntary manslaughter had been made an issue in the case, and the evidence could reasonably support a verdict finding it. *Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328 (1983), *overruling Commonwealth v. Manning,* 477 Pa. 495, 384 A.2d 1197 (1978) (which had held that murder defendant has unconditional right to unreasonable belief voluntary manslaughter charge upon request). At this point, however, we encounter some difficulty.

*Carter* was not decided until after this appeal was taken and the parties' briefs had been filed, and consequently it is not addressed either by the trial court in its opinion or by the parties in their briefs. Nevertheless, we must apply *Carter* in deciding this appeal, for the opinion in *Carter* does not specify that the rule it announces is prospective only. *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146 (1983). Our difficulty is that we find ourselves unable to apply *Carter* for two reasons. First, we are unable to determine from the record whether unreasonable belief voluntary manslaughter was made an issue in this case. Appellant himself did not testify. Certain questions asked by appellant's counsel in examining appellant's wife suggest that counsel was laying a foundation for arguing unreasonable belief voluntary manslaughter, N.T. 136 (appellant shorter and physically smaller than both Jones and Quinn), and there was testimony that after appellant's initial punch, the victim and appellant were fighting, N.T. 120, and that the police found a large glass lamp and a glass ashtray on the floor and tables and chairs knocked over, N.T. 216. But whether counsel did argue unreasonable belief voluntary manslaughter is not apparent, for the summations were not transcribed—at least, a transcript is not included in the record transmitted to us. And second, we do not have the benefit of the trial court's opinion on whether the evidence could reasonably support a verdict finding unreasonable belief voluntary manslaughter.

In these circumstances we have concluded that we should vacate the judgment of sentence and remand so that the

trial court may hear argument on whether, in light of *Commonwealth v. Carter, supra,* appellant's point for charge on unreasonable belief voluntary manslaughter should have been granted. No evidence should be taken. If the trial court concludes that the point was improperly refused, appellant should be granted a new trial. If the evidence warrants the charge at the new trial, the trial court should read the standard charge for unreasonable belief voluntary manslaughter. Pennsylvania Standard Jury Instruction, 15.2503B (Crim) Voluntary Manslaughter—Unreasonable Belief (as a Lesser-Included Offense of Murder), pp. 230–231. (Subcommittee Draft—February 8, 1975). Otherwise, the judgment of sentence should be reinstated.

■ Finally, by his issue XX appellant argues that his sentence was manifestly excessive and that the sentencing court did not comply with *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977), because it did not make specific findings on the record with respect to the twelve factors to be considered for probation. 42 Pa.C.S. § 9722. We find this argument without merit.

Judgment of sentence vacated and case remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

ROWLEY, J., files a concurring statement.

ROWLEY, Judge, concurring:

I join in President Judge Spaeth's opinion and the decision to vacate the judgment of sentence and remand for further proceedings. However, I write separately to emphasize that appellant's requested point for charge, as written, (Majority opinion at p. 237), is not a correct statement of the law regarding voluntary manslaughter. Therefore, the trial court did not err in refusing the *specific* instruction presented by appellant. Nonetheless, since appellant's request *may* be read as an attempt to persuade the trial court to instruct the jury regarding "unreasonable belief" volun-

tary manslaughter, as well as "heat of passion" voluntary manslaughter, the majority properly considered that issue.