CERCONE, Judge,
concurring and dissenting.
I would hold that appellant’s claim of trial counsel ineffectiveness for failure to proffer psychiatric testimony as to imperfect self-defense has arguable merit. I join the majority’s determination in all other respects. Accordingly, I concur and dissent. The trial judge, the Honorable W. Terrence O’Brien, aptly set forth the background of this case as follows:
On March 9, 1991, between 3:00 and 4:00 P.M., Angel Stier went to the Sheppard home on Fitzsimmons Street in Penn Hills, Allegheny County. (T-60, 61,108) When she arrived the [appellant], his sister, Amy, his brother, Robert, and his parents were there. (T-109) The [appellant], Robert and Stier went to the basement where they sat, talked and watched television. (T-109, 110) James Prenter subsequently joined them. (T-113) Sometime between 5:00 and 7:00 P.M. the victim, Karl Kerr, arrived. He stayed about thirty minutes to an hour and then left. (T-110) About a half hour later, Kerr returned with a “party ball”, which is a round ball full of beer with a pump, similar to a keg. (T-111, 112) Then Kerr left, and the [appellant], Robert, Prenter and Stier watched television, talked and drank. (T-113)
Kerr returned, around 9:00 or 9:30 P.M., and brought a bottle of Jack Daniels, which everyone drank. (T-115, 116) After that, several arguments ensued. (T-118) One incident involved Kerr slap boxing Robert, I.E. [sic], hitting him in the face. (T-118) As a result, Robert’s lip was cut. The [appellant] became angry and said, “You can’t hit my brother.” Kerr apologized to Robert and everyone resumed drinking and talking. (T-119)
Kerr became more argumentative. (T-121) Both he and [appellant] were drunk. (T-158) Then [appellant] and *602 Kerr argued about a mug that Kerr broke. (T-119, 132) The [appellant] wanted Kerr to pay for the mug, but he refused. [Appellant] accused Kerr of always breaking his “things”.
Lower court opinion, 6/30/93 at 2-4.
At this point the evidence diverges. The Commonwealth’s principal witness, Angel Stier, testified that appellant went into a utility room and returned wielding an ax. At that time, Kerr was sitting by the bar with his head resting on his hands. Stier recounted that appellant began swinging the ax, but missed Kerr. Kerr then went to sit in another chair. Appellant continued to swing at Kerr and struck him with the ax several times. Kerr died from the wounds which appellant inflicted. Commonwealth witness James Prenter corroborated Stier’s testimony that appellant left the room to obtain the ax.
Appellant’s version of the events contrasted markedly. He claimed that he drank a. substantial amount of alcoholic beverages that evening. He testified that after Kerr smashed a bottle of whiskey against a wall and broke appellant’s Naval mug, he [appellant] told Kerr to settle down or leave. After-wards, appellant claimed that he saw Kerr hunched over his brother, choking him, and heard his brother crying. At that point, appellant pushed Kerr away from his brother and confronted him. Kerr turned on appellant and cornered him in such a manner that he feared for his life. Appellant was able to reach an ax located behind him. He grabbed the ax and hit Kerr in the chin with the butt of the handle. The blow did not stop Kerr who then mumbled that he was going to kill appellant. Appellant indicated that although he and Kerr were best of friends, he had never seen Kerr act in such a manner. He further indicated that after seeing what he believed to be Kerr choking his brother, he feared for his own life. Therefore, he began swinging the ax, fatally wounding Kerr.
Our standard of review for allegations of ineffective assistance of counsel is well-established and quite narrow. Ineffec *603 tiveness claims are subject to a three-part analysis. First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel’s choice of action had some reasonable basis designed to effectuate his or her client’s interests. Finally, a showing must be made of how counsel’s choice of action prejudiced the client. Commonwealth v. Tavares, 382 Pa.Super. 317, 321, 555 A.2d 199, 201 (1989), appeal denied 524 Pa. 619, 571 A.2d 382 (1989). Prejudice in the context of a claim of ineffective assistance of counsel is determined by an evaluation of whether “but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different.” Commonwealth v. Petras, 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987). The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant. Commonwealth v. Smith, 380 Pa.Super. 619, 624, 552 A.2d 1053, 1056 (1989), appeal denied, 525 Pa. 581, 575 A.2d 112 (1990). Counsel will not be deemed ineffective for failing to assert a baseless claim. Commonwealth v. Cook, 383 Pa.Super. 615, 623, 557 A.2d 421, 425 (1989). Moreover, in making assertions of ineffectiveness, a claimant must allege sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective since the appellate courts will not consider such claims in a vacuum. Commonwealth v. Durst, 522 Pa. 2, 4, 559 A.2d 504, 505 (1989).
Appellant contends that trial counsel was ineffective for failing to argue that the testimony of his expert witness, Dr. Herbert Levit, concerning appellant’s paranoid personality disorder, was relevant to appellant’s defense of imperfect self-defense.[1] William E. Brennan, counsel for appellant before and during trial, was a member of the Allegheny County Public Defender’s office. Mr. Brennan filed notice that appellant intended to offer a diminished capacity defense based on appellant’s paranoid personality disorder. Before trial, the Commonwealth filed a petition seeking to limit appellant’s psychiatric testimony. The Commonwealth argued that evi *604 dence of appellant’s personality disorder was not relevant to appellant’s diminished capacity defense. The ¡ trial court agreed with the Commonwealth and excluded Dr. Levit’s testimony. See Commonwealth v. Zettlemoyer, 500 Pa., 16, 454 A.2d 937 (1982) (personality disorders are not relevant to a diminished capacity defense). On appeal, without contesting the trial court’s ruling, appellant contends that trial counsel was ineffective for failing to argue the relevance of Dr. Levit’s testimony as to “heat of passion” and “imperfect self-defense” voluntary manslaughter. I would find that such evidence would have been relevant to appellant’s defense of imperfect self-defense and failure to offer it for that purpose might have been ineffective assistance of counsel.
The Pennsylvania Crimes Code defines voluntary manslaughter in pertinent part as follows:
(a) General rule. — A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
(1) the individual killed; ...
(b) Unreasonable belief killing justifiable. — A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.
18 Pa;C.S.A. § 2503.
Appellant testified at trial that he acted in self-defense. Therefore all of the essential elements of evidence surrounding a self-defense claim become relevant and admissible. In so concluding, it is necessary to analyze the nature of self-defense. On that point, our Supreme Court has written:
It has long been the law in Pennsylvania that in order to establish the defense of self-defense, three essential elements must be proved by the defendant by a preponderance *605 of the evidence: ‘(1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing.... (2) The slayer must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom---- (3) The slayer must not have violated any duty to retreat or avoid the danger----’
Commonwealth v. Light, 458 Pa. 328, 333, 326 A.2d 288, 291 (1974) (emphasis in original) (citations omitted); Commonwealth v. Samuel, 527 Pa. 298, 590 A.2d 1245 (1991); Commonwealth v. Galloway, 336 Pa.Super. 225, 485 A.2d 776 (1984). The Commonwealth then has the burden of disproving self-defense beyond a reasonable doubt. The Commonwealth may meet this burden with evidence tending to disprove any of the three elements set forth in Light, supra. Commonwealth v. Dinkins, 272 Pa.Super. 387, 391, 416 A.2d 94, 96 (1979). The jury alone determines whether the defendant’s belief is reasonable. Commonwealth v. Fisher, 342 Pa.Super. 533, 541, 493 A.2d 719, 723 (1985). If the jury concludes that the killing was justified, then the defendant is properly acquitted. If the jury determines that the killing was not justified, but that the defendant subjectively believed the killing was necessary and committed the killing pursuant to that belief, then the defendant may be convicted of voluntary manslaughter. Galloway, 336 Pa.Super. at 239, 485 A.2d at 783.
Even a cursory review of appellant’s testimony demonstrates that the evidence was sufficient to place the issue of self-defense before the jury. Appellant testified that when Kerr turned on him, he feared for his life. This claim was bolstered by appellant’s testimony that Kerr threatened to kill him. Appellant stated that he feared Kerr because Kerr’s actions on that evening, including the smashing of the bottle and mug, were completely out of character. Appellant testified that he had never seen Kerr act so violently. Appellant’s evidence was sufficient to allow the jury to consider the issue of self-defense. Therefore, it must be determined whether the *606 testimony of Dr. Levit would have been admissible and helpful to appellant’s self-defense claim.[2]
The Pennsylvania Supreme Court has previously discussed the admissibility of psychiatric evidence- at trial where the defendant claims that he acted in self-defense. In Commonwealth v. Light, 458 Pa. 328, 326 A.2d 288 (1974), the defendant was charged with homicide. On the night in question, Light allowed various acquaintances to enter his home to wait for his brother, with whom he lived. While the defendant left the house to purchase beer, two of the guests went to the second floor of his house. When the defendant returned, he noticed lights in an upstairs bedroom and thought that prowlers might have entered. He grabbed a gun from his car and proceeded to enter the house. When the two guests came downstairs, the defendant shot and killed them. Id. at 331, 326 A.2d at 290. Based on these facts, a jury convicted appellant of voluntary manslaughter.
On appeal, the defendant claimed that the trial court erred in excluding the testimony of a psychiatrist as to whether the defendant believed he was acting in self-defense. The Supreme Court agreed with the defendant, holding that when self-defense is alleged, psychiatric testimony may be admitted to show the defendant’s state of mind at the time of the *607 incident.[3] Id. at 335, 326 A.2d at 292 (emphasis added). Specifically, Justice Pomeroy, writing for the Court, held:
It will be noted that the requirement that the defendant be operating under the reasonable belief that he is in imminent danger of death, great bodily harm or some felony, involves two elements. First, the defendant in fact must have acted out of an honest, bona fide belief that he was in imminent danger. Second, the belief must be reasonable in light of the facts as they appeared to him. The first element is entirely subjective; the second, clearly objective.... [W]e believe that psychiatric testimony should be admissible as to the first element, i.e., the subjective element of the defendant’s state of mind at the time of the occurrence. As stated below, it is not relevant as to the objective factor of reasonableness of the defendant’s belief.
Light, 458 Pa. at 334, 326 A.2d at 292. Accord Commonwealth v. Black, 474 Pa. 47, 376 A.2d 627 (1977). Cf. Commonwealth v. McCusker, 448 Pa. 382, 292 A.2d 286 (1972) (psychiatric evidence permitted to show that the defendant acted in the heat of passion at the time of the killing). Thus, our Supreme Court has expressly approved of a defendant’s use of expert testimony as it is relevant to his subjective belief that he is in imminent danger. It must also be noted that neither the Supreme Court’s opinion in Light nor the cases citing that decision have limited the types of expert testimony which is admissible on this point, or the types of neuroses which may cause a defendant to honestly believe he is in imminent danger. Compare Commonwealth v. Zettlemoyer, supra (expert testimony on paranoid personality disorder is irrelevant to a diminished capacity defense to murder).
In the present case, the trial court reasoned that appellant’s claim of ineffectiveness was meritless because Dr. Levit’s testimony did not address appellant’s defense of self-defense. I cannot agree with this conclusion. Dr. Levit examined *608 appellant and administered a series of tests to him. The results of those tests, in conjunction with background information Dr. Levit acquired concerning appellant, formed the basis of Dr. Levit’s opinion that appellant suffered from a paranoid personality disorder. N.T. 12/5/91 at 6-8. Dr. Levit’s conclusions are found in the following colloquy which occurred before trial began:
Q: [By defense counsel] Now, Doctor, the mental disorder that he [defendant] indeed suffers from, would that indeed affect the cognitive functions of deliberations in premeditation?
A: It certainly would.
Q: Would you please tell the Court how.
• ******
A: I think that certainly there would be a distortion in his cognitive processes. His judgment would be impaired. He does have a history of rage reactions, of impulsively acting violently under the influence of drugs, which includes alcohol.
His inhibitions would be impaired, his judgment would certainly be impaired, and his ability to formulate reasonable judgments in my opinion would be quite impaired.
Q: Okay. Would they be impaired separate and distinct from the abuse of alcohol, simply suffering from a paranoid personality disorder?
A: I think so, yes, because people who are paranoid misperceive what’s going on in their environment.
* * . * * * *
Q: Now, Doctor, separate from the issue of deliberation and premeditation, would his paranoid personality plus the abuse of alcohol have an effect upon his subjective state of mind at the time of the killing as well?
A: Yes.
Q: To what extent?
*609 A: His state of mind would have been altered from what we consider normal, it would have been impaired, he would he prone to misperceive the things going on around him.
N.T. 12/5/91 at 9-10, 12 (emphasis added). Thus, expert psychiatric testimony revealed that appellant suffered from a paranoid personality disorder. Dr. Levit stated that this disorder distorted appellant’s cognitive functions and impaired his ability to form reasonable judgments. N.T. 12/5/91 at 9-10. Contrary to the holding of the trial court, this evidence may have been relevant to show that appellant misconstrued the events in question and that he held an honest and bona fide belief that he was acting in self defense. Commonwealth v. Light, 458 Pa. at 334, 326 A.2d at 292. Dr. Levit’s testimony concerning appellant’s disorder could have given legitimacy to appellant’s defense, which the jury might have otherwise construed as appellant’s uncorroborated and desperate attempt to absolve himself of liability.[4]
*610 The Commonwealth argues that appellant’s desire to introduce psychiatric testimony is nothing more than a veiled attempt to reduce the charge of murder to voluntary manslaughter based on his intoxicated condition at the time of the killing.[5] This argument is sheer speculation and without a scintilla of fact to support it. Dr. Levit testified that appellant’s paranoid condition would affect his ability to reason, separate and apart from his abuse of alcohol. N.T. 12/5/91 at 10. Because of the psychiatric testimony, the jury could have found that appellant’s reasoning was hampered regardless of his intoxication, and might have served to reduce the killing to voluntary manslaughter. Cf. Commonwealth v. Potts, 486 Pa. 509, 406 A.2d 1007 (1979) (plurality) (evidence of intoxication is not incompatible with evidence concerning heat of passion voluntary manslaughter).
Moreover, this evidence is almost identical to that found in Commonwealth v. Potts, supra. In that case, the Supreme Court found trial counsel ineffective for failing to present psychiatric testimony that the defendant suffered from a condition which caused him to perceive reality inaccurately, and which was exacerbated when the defendant was under the influence of alcohol. Id. at 512, 406 A.2d at 1008. The Supreme Court opined that when the defendant’s state of mind is the only disputed issue at trial, failure to present determinative psychiatric testimony constitutes ineffective assistance of counsel. Id. at 513, 406 A.2d at 1009.
In the present case appellant’s state of mind was not the only disputed issue which the jury was required to resolve. *611 Nonetheless, it was a critical issue. The certified transcripts reveal that trial counsel attempted to prove that appellant believed he was acting in self-defense. Moreover, appellant was the only person to testify that he was acting in such a manner. Without a full disclosure of evidence relating to self-defense, the accused was effectively denied his day in court. Therefore, psychiatric testimony, such as was explained by Dr. Levit, would have been probative of appellant’s state of mind. See Commonwealth v. Fierst, 423 Pa.Super. 232, 620 A.2d 1196 (1993) (where critical issue was the voluntariness of appellant’s actions, failure to offer expert testimony concerning appellant’s seizure disorder was arguably ineffective assistance of counsel). Accordingly, I would hold that appellant’s claim of ineffectiveness has arguable merit.

. Voluntary manslaughter based on an imperfect self-defense is defined in 18 Pa.C.S.A. § 2503(b).

. The majority holds that the facts belie appellant’s claim of self-defense and, instead, overwhelmingly demonstrate that appellant committed first-degree murder. The majority also finds appellant’s theory as to self-defense to be incredible. In making these determinations, the majority has engaged in a fact-finding determination as to whether the evidence weighed in favor of appellant’s defense. Where issues of credibility and .weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. Commonwealth v. Paquette, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973); Commonwealth v. Hamilton, 376 Pa.Super. 404 at 414, 546 A.2d at 90, 95-96. (1988). The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. Commonwealth v. Zapata, 447 Pa. 322, 290 A.2d 114 (1972). An appellate court, reviewing the cold record, cannot deny appellant relief based on its disbelief of his defense. Accordingly, review of the instant issue must focus upon whether sufficient evidence of self-defense exists and whether expert testimony would have been helpful to appellant’s cause.

. Although the Supreme Court held that the trial court had erred by excluding this evidence at trial, the Court found the error to be harmless since the evidence was only relevant to reduce the charges to voluntary manslaughter, of which appellant had already been convicted. Id. at 336, 326 A.2d at 292.

. I find it appropriate to address three additional points made in the majority opinion. First, the majority would find that the evidence overwhelmingly supported the Commonwealth’s version of the events. Had the jury had the benefit of hearing Dr. Levit’s testimony, however, it could have still reconciled the Commonwealth’s version of the events with appellant’s mistaken belief that he was acting in self-defense.
Second, the majority finds that "Dr. Levit did not testify that appellant’s underlying chronic condition resulted in such an exacerbated degree of stress in this case as to overcome appellant’s will or judgment.” Majority opinion at 9-10. Dr. Levit testified that appellant’s disorder caused impaired judgment and a distortion of reality. Ultimately, the jury must determine whether appellant’s judgment may have been sufficiently impaired so that he thought he was acting in self-defense. Commonwealth v. Hill, 427 Pa.Super. 440, 446, 629 A.2d 949, 952 (1993). Further, I concede that appellant’s will was not affected by his disorder. The defense of self-defense assumes that the actor intended the results of his actions while defending himself. See 18 Pa.C.S.A. § 2503(b) (a person who intentionally kills under an unreasonable belief that the killing was justified commits voluntary manslaughter). The jury must then look to the actor’s state of mind to determine the second element of self-defense — whether his actions were justified or whether he truly believed them to be justified. See Commonwealth, v. Light, 458 Pa. at 335-36, 326 A.2d at 292 (expert psychiatric testimony highlights the psychological differences between justifiable homicide and voluntary manslaughter).
Finally, the majority would find that a diagnosis of paranoid personality disorder "does not provide appellant with a walking immunity *610 from any charge of homicide higher than voluntary manslaughter” because such personalities are "extant throughout the population.” Notwithstanding that these characterizations concerning the general population are unsupported by the record in this case, I do not deign to imply that appellant may only be convicted of voluntary manslaughter. Certainly the evidence is sufficient to convict appellant of first-degree murder. My point is that if the evidence supports a finding of voluntary manslaughter as well, the defendant is entitled to prepare a full defense to support his position.

. Under 18 Pa.C.S.A. § 308, evidence of voluntary intoxication may only be used to reduce murder from a higher degree to a lower degree; not to reduce murder to voluntary manslaughter.