368 A.2d 643

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William Albert BRADO, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1976.

Decided Jan. 28, 1977.

John J. Dean, Lester G. Nauhaus, Ira C. Houck, Jr., Louis R. Dadowski, Jr., Pittsburgh, for appellant.

Robert L. Eberhardt, Asst. Dist. Atty., Robert E. Colville, Dist. Atty., Robert Zunich, Asst. Dist. Atty., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Appellant, William Albert Brado, was indicted in Allegheny County on a bill of indictment wherein he was charged with murder and voluntary manslaughter, and on a second bill of indictment wherein he was charged, inter alia, with a violation of the Controlled Substance, Drug, Device and Cosmetic Act [1] and unlawfully carrying a firearm without a license. On the morning of the day the indictments were called for trial, Brado with the assistance of counsel entered a plea of guilty to a violation of the Controlled Substance Act and to unlawfully carrying a firearm. He plead not guilty and elected to go to trial on the murder and manslaughter indictment. A jury was impaneled and at the conclusion of the trial, Brado was convicted of voluntary manslaughter. Following denial of post-verdict motions, consecutive prison sentences were imposed on each indictment. An appeal from the judgment imposed on the manslaughter conviction was entered in this Court. An appeal from the judgment imposed on the second indictment was entered in the Superior Court and later certified here. However, this last mentioned appeal is not now pressed.

The pertinent facts, as disclosed by the record, are these:

On December 8, 1974, Brado and his friend, John Fessler, together with two female companions, were patrons at the Barngrover Tavern located on South Pioneer Road, Hampton Township, Allegheny County, Pennsylvania. Both Brado and Fessler were professional truck drivers, and had just completed a two-day road trip. During the course of the trip Brado had ingested eight to ten capsules containing preludin, a drug closely related to

1. Act of April 14, 1972, P.L. 233, No. 64, § 13, *as amended,* 35 P. S. § 780–113 (Supp.1976–77).

amphetamine, to keep awake. The quartet had visited two other taverns before stopping at the Barngrover Tavern. After spending some time there, Fessler's date departed without telling her three companions. At about 1:30 a. m., after consuming a large quantity of alcohol, Brado became concerned about his friend's companion. When told she was with another man in the parking lot, Brado left the tavern, went to his tractor-trailer, took his .357 Magnum handgun from the truck, and approached the car which he believed contained the couple. Opening the left front door, Brado fired one shot at the male occupant, Jeffrey Schmaley, and immediately closed the door. The female occupant, who in fact was not Fessler's date, called the police. Schmaley died a short time later as a result of the gunshot wound. Brado testified at trial that his physical and mental condition was such at the time of the shooting he did not know what he was doing.

The morning the jury selection process for Brado's trial began, a local newspaper of wide circulation included a two-column editorial entitled, "Drunkenness As a Defense" which discussed this Court's recent decision in *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975). The editorial included a highly critical discussion of the *Graves* decision and said in part that as a result of that ruling ". . . by claiming drunkenness one may now be able to escape punishment for premeditated murder, robbery, burglary and rape." The editorial was accompanied by a cartoon entitled "This Way Out" which depicted a judge in his robes on the bench excusing a criminal defendant, who was holding an indictment for murder, robbery, burglary and rape in one hand and drinking from a bottle labeled "Booze Defense" in the other hand. The *Graves* decision was denounced as a "socially intolerable conclusion," because among other things "the robber or rapist can in effect use inebriation with the same effectiveness as insanity to es-

cape punishment; but society cannot in turn protect itself by incarcerating in a mental institution criminals excused because of drunkenness."

■ When the contents of the newspaper editorial were called to the attention of Brado's counsel, he immediately moved for a continuance of the trial. The motion was denied. During voir dire each potential juror was questioned by the trial judge as to whether he or she had read the newspaper in relevant part and several admitted having done so, but said in spite thereof Brado's guilt or innocence would be decided on the evidence presented at trial. Some of these individuals became part of the trial jury. Under the circumstances, we rule the court erred in refusing to continue the trial; hence the judgment of sentence imposed on the manslaughter conviction will be reversed.

■ Under most circumstances, a claim of due process violation, such as is here involved, requires a showing of identifiable prejudice to the defendant—"one who claims such an injustice [unfair trial] must rely on more than mere guess." *Commonwealth v. Lopinson,* 427 Pa. 284, 295, 234 A.2d 552, 560 (1967). However, where the nature of the publicity is determined to be inherently prejudicial, the defendant is not required to show a nexus between the publicity and actual jury prejudice and he does not have the burden of showing identifiable prejudice. *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209 (1973). While the editorial complained of here did not mention Brado's case, it criticized and ridiculed this Court's approval of permitting intoxication as a defense to criminal conduct—the very defense relied upon by Brado—to such an extent that it must be considered inherently prejudicial to him, thus relieving him of the burden of showing identifiable prejudice.

All of the jurors involved in Brado's trial stated they would not be influenced by the editorial involved. How-

ever, we must realize that, as stated by Mr. Justice Frankfurter, dissenting in *Stroble v. California*, 343 U. S. 181, 201, 72 S.Ct. 599, 609, 96 L.Ed. 872 (1952), "Jurors are of course human beings and even with the best intentions in the world they are, in the well-known phrase of Holmes and Hughes, JJ., 'extremely likely to be impregnated by the environing atmosphere.' " While the jurors may not have considered themselves to be prejudiced by the newspaper editorial and cartoon, it is most likely that at the very least, it alerted them to be extremely critical of a defense such as Brado was about to present. Anyone who was exposed to such news reporting would surely have formed some opinion as to intoxication as a defense to criminal conduct. Such an influence from outside the courtroom affecting the impartiality of the jurors cannot be tolerated in a criminal trial. Our system is such that the conclusions to be reached in a case must be based solely on the evidence and argument in open court unaffected by any outside influence. At a minimum, the editorial would constitute a public response to *Graves*. The jury's knowledge of this response presents a situation where the jury is aware of the verdict the public expects, prior to rendering its verdict.

The editorial undoubtedly could have had the effect of creating. outrage among members of the public against this Court for its ruling regarding an intoxication defense. The probability that the jurors would be affected by the article and direct their anger against the defendant, who presented that very defense the day the articles were published, was so high that the article must be deemed inherently prejudicial to the defendant, Brado. Pursuant to the rule of *Commonwealth v. Pierce*, supra, once prejudice of this nature is found, Brado is not required to point to any actual prejudice on the part of any particular juror.

The possibility of an unfair trial could have been avoided in this case by granting the requested continuance. The trial court erred in not doing so and the judgment of sentence must be reversed.

Judgment imposed on the manslaughter conviction is reversed and a new trial is ordered.

NIX J., did not participate in the consideration or decision of this case.