421 A.2d 699

**COMMONWEALTH of Pennsylvania**

v.

**Ronald MAXWELL, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1979.

Filed Aug. 29, 1980.

236

Allen H. Tollen, Chester, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Media, for Commonwealth, appellee.

Before SPAETH, CAVANAUGH and O'KICKI, JJ.*

SPAETH, Judge:

Appellant was tried before a jury on two counts of rape, two counts of simple assault, one count of unlawful restraint, and one count of involuntary deviate sexual intercourse. The jury found him guilty on one of the two counts of rape, one of the two counts of simple assault, and the one count of unlawful restraint; it acquitted him of the other charges. Post–verdict motions were denied and appellant was sentenced to total concurrent sentences of three to six years imprisonment. On this appeal he argues (1) that the evidence was insufficient to support his convictions; (2) that the lower court erred in refusing to order a new panel of

---

* President Judge JOSEPH O'KICKI of the Court of Common Pleas of Cambria County, Pennsylvania, is sitting by designation.

jurors following a comment made by one of the panel members; (3) that the lower court erred in refusing to order lie detector tests; and (4) that the sentences were excessive.[1]

## 1

The victim testified as follows. On March 20, 1978, while at her home in Toby Farms, she answered a telephone call from appellant. Appellant told her that he was conducting a survey concerning household products, and she agreed to answer some questions over the telephone. He also invited her to a products demonstration that he said he was holding on March 22 at the Howard Johnson's Restaurant in Chester. She agreed to attend, and on March 22 took the bus to the restaurant. Appellant met her there but told her that there would not be a demonstration because too few people had come. When she left the restaurant to wait for the bus, appellant offered her a ride home in his automobile, stating that the next bus would not come for an hour. She accepted his offer and left with him in his automobile. When he drove in a direction away from where she lived, she asked to be let out of the automobile. Appellant screamed at her, shoved her down under the dashboard, and put his foot on top of her back. She was frightened; appellant was much larger than the victim, and he threatened to hurt her baby, who was at home with the victim's sister. Appellant drove to a liquor store and went inside, telling the victim to remain in the automobile or he would hurt her baby. Before she could make up her mind whether or not to attempt to escape, appellant returned to the automobile with a bottle of liquor. He drove away, holding her down with his foot. He stopped at a telephone booth in a relatively deserted area so that the victim could call her husband. Appellant directed her to say that everything was all right. She did so and he then took her to his home in Folcroft, forced her to enter, and once inside forced her to commit oral and vaginal intercourse with him. When they left his home, appellant

---

1. Appellant also argues that the lower court erred in refusing to grant his pretrial motions with respect to what he alleges were improper duplicative complaints. This argument is without merit and requires no discussion.

again pushed her beneath the dashboard. She said that she wanted to go home, but he took her to a tavern. He promised her that he would take her home if she kissed the bartender. She did so and they left but appellant still refused to take her home and instead drove to a spot near the Tinicum marshes, punched her, and forced her to submit again to sexual intercourse. After this he drove her to a spot near her home and let her out of the automobile. She observed the license number of the automobile and reported the incident to the police.[2]

Besides extensively cross–examining the victim as to why she did not escape or notify someone of her predicament when she had a chance at the liquor store, the telephone booth, and the tavern, appellant testified in his own defense, as follows. He did not deny that he engaged in sexual activities with the victim, but maintained that she consented to and initiated the activities. He said the victim called him on March 20 by mistake, but that instead of hanging up their telephones, they talked to each other and decided to rendezvous on March 22. She asked appellant to meet her in his automobile at a store near her home. He did, and together they drove to the liquor store and then to the back door of his home. He testified that she entered voluntarily and that once inside she consented to, and voluntarily engaged in, the sexual activities. Afterwards, he took the victim to a tavern. While there she flirted with the bartender and kissed him. They left the tavern but the victim did not want to go home until appellant had had intercourse with her again. He drove to a spot near the Tinicum

2. The several counts on which appellant was tried were as follows: appellant was charged with rape, assault, unlawful restraint, and involuntary deviate sexual intercourse in connection with the incident alleged to have occurred at his home in Folcroft during the day, and with rape, assault, and unlawful restraint in connection with the incident alleged to have occurred that evening near the Tinicum marshes. Just before the trial was to begin, however, the trial judge concluded that the two unlawful restraint charges covered one continuing offense, and that the second count was therefore unnecessary and duplicative. Thus, one count of unlawful restraint was dropped and appellant tried only on a single count, which covered his activities both in Folcroft and near the Tinicum marshes.

marshes and there at her request had intercourse with her. He then drove her to a spot near her home and she got out of the automobile. She was very upset because it was so late and she was worried that her husband would discover her infidelity.

Appellant's testimony was supported in part by one of his neighbors, who testified that on the day in question she saw the victim enter appellant's home with appellant, and that the victim did not appear to have been forced to enter. Also, the bartender testified that after the victim entered the tavern she grabbed him, kissed him, and handed him a note with her name and telephone number on it.

The jury's verdicts may be summarized as finding appellant guilty only of the incident alleged to have occurred near the Tinicum marshes; the jury acquitted appellant of the charges arising out of the incident alleged to have occurred earlier in the day, in appellant's home in Folcroft.

In testing appellant's claim that the evidence was insufficient to support his convictions, we first accept as true all the evidence upon which the finder of fact could properly have reached its verdict, and then, after giving the Commonwealth the benefit of all reasonable inferences arising from that evidence, we ask whether the evidence and the inferences arising from it are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Steward*, 263 Pa.Super. 191, 197, 397 A.2d 812, 815–16 (1979); *Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1979).

When these principles are applied here, it is apparent that the evidence was amply sufficient to support appellant's convictions, if the victim's testimony concerning the Tinicum incident was believed. Appellant's main argument, therefore, is that this testimony should not have been believed, especially since the jury returned verdicts of not guilty on the Folcroft charges.

Appellant's emphasis on the not guilty verdicts is misplaced. Any inconsistency between the guilty and not

guilty verdicts is more apparent than real. The Tinicum and Folcroft incidents were distinct not only as to time but also place, and the evidence concerning each differed. No reason appears why the jury could not be convinced beyond a reasonable doubt that the Tinicum incident had occurred, but find itself with some doubt about the Folcroft incident. Apparently the jury believed the testimony offered by the victim concerning the Tinicum incident and disbelieved that offered by appellant. It is settled that "[w]here the evidence is conflicting the question of the credibility of witnesses is solely for the jury . . . ." *Commonwealth v. Rebovich*, 267 Pa.Super. 254, 260, 406 A.2d 791, 794 (1979). *See Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972); *Commonwealth v. Johnson*, 263 Pa.Super. 512, 398 A.2d 694 (1979). The fact that the verdicts may be interpreted to reflect the jury's disbelief of, or doubt about, some of the victim's testimony concerning the Folcroft incident does not mean that the jury could not believe the victim's testimony concerning the Tinicum incident. The jury was not required to find all of her testimony either worthy or unworthy of disbelief; it was entitled to believe all, part, or none of the testimony. *Commonwealth v. Pitts*, 486 Pa. 212, 404 A.2d 1305 (1979); *Commonwealth v. Smith*, 484 Pa. 71, 398 A.2d 948 (1979).

■ In any event, even if we were to regard the verdicts as inconsistent, that would not constitute a ground for reversal. Inconsistent verdicts are permitted in criminal cases, provided that the evidence is sufficient to support the charges upon which the defendant was convicted. *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971); *Commonwealth v. Glendening*, 262 Pa.Super. 357, 396 A.2d 793 (1979); *Commonwealth v. Love*, 248 Pa.Super. 387, 375 A.2d 151 (1977); *Commonwealth v. Parotto*, 189 Pa.Super. 415, 150 A.2d 396 (1959).

2

■ During the initial stages of jury selection, when general questions were being asked, one member of the panel

stated that she belonged to Women Organized Against Rape. She was excused, but appellant argues that her statement had such a prejudicial impact on the other members of the panel that the lower court erred in refusing his motion to order a new panel.

This argument is without merit. The prospective juror's statement contained no specific comment about the accused, his credibility or character, the merits of the case, or any possible defenses. At most the statement indicated that there was an organization against the crime of rape and that she was a member. Appellant has demonstrated no prejudice, and we are unable to accept his contention that we should infer prejudice from the mere mention of the organization. It seems probable that at least some of the members of the panel already knew that the organization existed, and yet this prior knowledge would not be held sufficient to disqualify them. The fact that the prospective juror stated that she was a member of the organization adds nothing. In support of his argument appellant cites only the Supreme Court's decisions in *Commonwealth v. Harkins*, 459 Pa. 196, 328 A.2d 156 (1974), and *Commonwealth v. Brado*, 470 Pa. 306, 368 A.2d 643 (1977), but both of these decisions are inapposite, for in both prejudice was shown. In *Harkins*, a panel member stated that the accused had stolen his automobile, and in *Brado*, several panel members were permitted to sit as jurors although they admitted to having read a newspaper article and a cartoon that criticized in very strong terms the very defense the defendant planned to offer.

3

■ Nor is there any merit in appellant's argument that the lower court erred in refusing to grant his pre–trial motion that the court order him and the victim to submit to lie detector tests, with the results of the tests to be admitted in evidence at trial. In *Commonwealth v. Kemp*, 270 Pa.Super. 7, 410 A.2d 870 (1979), Justice O'BRIEN, speaking for a panel of this court, set forth the following brief review of the law of the Commonwealth concerning lie detector tests:

It is well settled that the law in Pennsylvania is that reference to a lie detector test or the result thereof which raises inferences concerning the guilt or innocence of a defendant is inadmissible. *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971), cert. den. 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972); *Commonwealth v. Saunders*, 386 Pa. 149, 125 A.2d 442 (1956). "Polygraph examinations have not attained acceptance as a reliable means of ascertaining truth or deception." *Commonwealth v. Cunningham*, 471 Pa. 577, 370 A.2d 1172 (1977), (dissenting opinion by Roberts, J.); *Commonwealth v. Brooks*, 454 Pa. 75, 309 A.3d 732 (1973) (opinion by O'Brien, J., joined by Pomeroy, J.).

Consequently, the prosecution is forbidden to attempt to rehabilitate a witness who has been impeached by a prior inconsistent statement by introducing evidence that the witness had taken a lie detector test. *Commonwealth v. Johnson*, 441 Pa. 237, 272 A.2d 467 (1971). Neither may defendant introduce the results of such a test, *Commonwealth v. Brooks*, supra, (opinion of O'Brien, J., joined by Pomeroy, J.); see, *Commonwealth v. Talley*, 456 Pa. 574, 318 A.2d 922 (1974) (opinion of O'Brien, J.), or evidence that he was willing to take such a test, *Commonwealth v. Saunders*, supra.

*Id.*, 270 Pa.Super. at 11, 410 A.3d at 871.

### 4

Eight days after the lower court imposed the sentences, appellant, pursuant to Pa.R.Crim.P., Rule 1410, filed a motion to modify the sentences. In his motion appellant contended that the lower court had failed to state the reasons for the sentences on the record as required by *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977), *see Commonwealth v. Young*, 272 Pa.Super. 82, 414 A.2d 679 (1979), and that the sentences were excessive. The lower court took no action on the motion.

It is settled that the imposition of a proper sentence is a matter vested in the sound discretion of the sentencing judge. *Commonwealth v. Valentin*, 259 Pa.Super. 496, 393

A.2d 935 (1978). In exercising this discretion, however, the judge must rely on full and accurate information and must state on the record the reasons for the sentences imposed. *Commonwealth v. Riggins, supra; Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979). This statement of reasons must show that in imposing sentence, the judge attached weight to the factors set forth in the statutory guidelines for sentencing, and carefully considered the facts concerning the circumstances of the offense and the character of the defendant. *Commonwealth v. Wicks, supra.* If the sentencing judge fails to state the reasons for the sentences on the record, we will vacate the sentences and remand for resentencing. *See Commonwealth v. Young, supra; Commonwealth v. Wicks, supra.*

In imposing the sentences in the present case, the lower court failed to state the reasons for the sentences. Because of this failure it violated the rule set forth in *Commonwealth v. Riggins, supra.* Moreover, without a statement of the reasons for the sentences we cannot effectively treat appellant's further claim that the sentences were excessive.

Appellant's convictions are affirmed, but the sentences are vacated and the case is remanded for resentencing.