J-A25042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LUIS BERNAL | : | |
| | : | |
| Appellant | : | No. 258 MDA 2020 |

Appeal from the PCRA Order Entered January 21, 2020
In the Court of Common Pleas of Huntingdon County
Criminal Division at No(s):  CP-31-CR-0000615-2014

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED:  JANUARY 21, 2021**

Appellant, Luis Bernal, appeals from the order entered in the Huntingdon County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court has previously summarized the factual history and some of the procedural history of this case as follows:

> The charges in this matter arose after an eighteen-month investigation conducted by various law enforcement agencies in Huntingdon County.  The investigation was initiated when Huntingdon Borough Police received complaints that [Appellant] and his girlfriend, Jacquita Kiernan, had moved to the area in November 2012 from New York City and were bringing large quantities of heroin into the area for distribution.  Agent Mark Sinisi of the Office of Attorney General was the lead investigator.  Agent Sinisi, with the assistance of confidential informants, made numerous controlled buys from [Appellant's] distributors.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Ultimately, [Appellant] was arrested on April 28, 2014. He made two statements to the police. The first, in the hours immediately following his arrest, was brief, lasting only forty-five minutes. The second statement, during which he was represented by counsel, occurred on May 22, 2014, and lasted approximately three hours. The trial court summarized that interview as follows:

[Appellant] told Agent Sinisi that he and Kiernan moved to Huntingdon County from New York City in November, 2012. Ms. Kiernan had family in the area, and the couple stayed with them until moving to the Comfort Inn in Huntingdon. Subsequently they rented a cabin on Snyder's Run Road[.]

Almost immediately, [Appellant] began distributing heroin. He told Agent Sinisi that initially Kiernan's cousin was selling two (2) bundles of heroin for him every two (2) to three (3) days. A bundle is ten (10) stamp size bags containing from .01 to .04 grams of heroin. [Appellant] charged the cousin $125 per bundle. The cost to [Appellant] at that time, he said, was $70 per bundle.

[Appellant] told Agent Sinisi that he obtained the heroin he sold in New York. Over the course of the eighteen (18) months that he was in business, [Appellant] related that he had several different suppliers in New York. At the beginning he said he was obtaining thirty (30) bundles every two (2) weeks. In January, 2013, and continuing for seven (7) or eight (8) months, a new New York supplier increased his volume to fifty (50) bundles every two (2) weeks. This source, [Appellant] said, was only charging him $60 a bundle. In Huntingdon at that time a bundle sold for as much as $300. [Appellant] related that his volume gradually increased, and that he obtained as much as ninety (90) bundles every two (2) weeks, and that on his birthday, July 5, 2013, he was able to purchase one hundred (100) bundles. In the months preceding his arrest, [Appellant] told Agent Sinisi that he began purchasing raw heroin which he would then cut and package in green, stamp size bags.

[*   *   *]

> During the course of the second interview, [Appellant] gave Agent Sinisi two (2) estimates of the gross income from his heroin operation. First, he opined that he was taking in $3,000 every two (2) weeks. Later, he said he was grossing $5,000 every two (2) weeks. Agent Sinisi conservatively estimated that over the course of eighteen (18) months [Appellant] grossed $180,000.

> Trial Court Opinion, 6/28/16, at 4-7.

> After a jury trial, [Appellant] was found guilty of [three counts of possession of a controlled substance with the intent to deliver ("PWID"), two counts of corrupt organizations, and one count each of conspiracy, criminal use of a communication facility, and dealing in proceeds of unlawful activities] on September 11, 2015. On January 5, 2016, the court sentenced him to an aggregate term of 16 to 32 years' imprisonment. The trial court denied [Appellant's] post-sentence motions. On July 12, 2016, [Appellant] filed a timely notice of appeal, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

*Commonwealth v. Bernal*, No. 1129 MDA 2016, unpublished memorandum at 2-4 (Pa.Super. filed Feb. 27, 2017) (internal footnote omitted). This Court affirmed the judgment of sentence on February 27, 2017. *See id.* Appellant did not seek further direct review.

On February 20, 2018, Appellant filed a timely *pro se* PCRA petition. Appellant filed a counseled, amended PCRA petition on May 31, 2018. In his petitions, Appellant raised various claims of trial and appellate counsels' ineffectiveness. The court held a PCRA hearing on April 18, 2019, at which trial counsel testified. On January 21, 2020, the court denied PCRA relief.

Appellant timely filed a notice of appeal on February 12, 2020. On February 18, 2020, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on March 11, 2020.

Appellant raises seven issues for our review:

Trial counsel failed to interview or call Alexis Swanger as a witness given that she was a confidential informant and would provide testimony that police falsified her statements.

Trial counsel was ineffective when he failed to request a mistrial when the co-defendant Jacquita Kiernan was removed from the case/courtroom after her plea of guilty despite the fact that the jury saw her present during jury selection.

Trial counsel was ineffective when he failed to request that the court give a proper curative instruction to the jury after Kiernan's guilty plea and trial counsel was ineffective when he failed to request that the court *voir dire* the jury regarding Kiernan's guilty plea.

Trial counsel was ineffective when he failed to object on multiple occasions to hearsay testimony.

Trial counsel [was] ineffective for not requesting jury instruction 4.06—certain testimony subject to special scrutiny as to Beth Harms, Aaron Dimoff, and David Steel as well as not requesting jury instruction 4.01—Accomplice Testimony as to Beth Harms, Aaron Dimoff, and David Steel.

Trial counsel was ineffective for not cross-examining Aaron Dimoff on [his] arrest in this instant case as it relates to his bias in providing testimony to the prosecution.

Appellate counsel was ineffective for failing to properly challenge the discretionary aspects of Appellant's sentence by not complying with Pa.R.A.P. [2119(f)].

(Appellant's Brief at 6).

- 4 -

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We do not give the same deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190 (Pa.Super. 2012). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." *Commonwealth v. Johnson*, 600 Pa. 329, 356, 966 A.2d 523, 539 (2009).

In his first issue, Appellant argues trial counsel was ineffective in failing to investigate and/or call as a witness Alexis Swanger. Appellant asserts Alexis Swanger was a confidential informant used in drug investigations conducted by Agent Sinisi. Appellant maintains that Ms. Swanger wrote a letter to Appellant's mother dated March 20, 2016, indicating that Agent Sinisi sometimes told her to include things that were untrue in her informant statements. Appellant insists part of his defense theory at trial was that the Commonwealth exaggerated his role in the crimes charged. Appellant emphasizes that he presented Attorney Christopher Wencker as a witness at trial, who had represented Appellant during one of the police interviews.

Attorney Wencker testified that police tried to pressure Appellant to "cooperate" by admitting things Appellant did not believe were necessarily true. Appellant contends trial counsel was ineffective for failing to investigate and/or present Ms. Swanger as a witness because her testimony would have corroborated the testimony of Attorney Wencker and supported Appellant's position that "law enforcement already had a theory and narrative of the case and anything that did not match their conclusions [was] dismissed as [a] falsehood[.]" (Appellant's Brief at 11). Appellant concludes the PCRA court improperly denied Appellant's ineffectiveness claim, and this Court must grant appropriate relief. We disagree.

Pennsylvania law presumes counsel has rendered effective assistance. **Commonwealth v. Williams**, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. **Commonwealth v. Kimball**, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. **Williams, supra**.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." **Commonwealth**

*v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

For claims of ineffectiveness based upon counsel's failure to call a witness:

> A defense attorney's failure to call certain witnesses does not constitute *per se* ineffectiveness. In establishing whether defense counsel was ineffective for failing to call witnesses, a defendant must prove the witnesses existed, the witnesses were ready and willing to testify, and the absence of the witnesses' testimony prejudiced petitioner and denied him a fair trial.

*Commonwealth v. Cox*, 603 Pa. 223, 267-68, 983 A.2d 666, 693 (2009)

(internal citations omitted). A petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Commonwealth v. Gibson***, 597 Pa. 402, 441, 951 A.2d 1110, 1134 (2008).

Regarding counsel's preparation for trial:

> Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. Counsel's unreasonable failure to prepare for trial is an abdication of the minimum performance required of defense counsel. The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance.

***Johnson, supra*** at 350-51, 966 A.2d at 535-36 (internal citations and quotation marks omitted).

Instantly, Appellant did not present Ms. Swanger as a witness at the PCRA hearing. Rather, Appellant relied on a letter purportedly authored by Ms. Swanger, which Appellant attached to his PCRA petition as Exhibit B. As the PCRA court explained: "In the letter the writer said that she had been a confidential informant for Agent Sinisi and that he had her put false information into her written informant reports. The writer did not indicate she had been an informant in this case." (Rule 1925(a) Opinion, filed April 6, 2020, at 4).

Trial counsel testified at the PCRA hearing that Ms. Swanger's letter related to police misconduct in controlled buys she was involved in, unrelated

to Appellant's case. Counsel testified that he would not have called Ms. Swanger as a witness at trial because she had nothing specific to offer related to **Appellant's** case. (*See* N.T. PCRA Hearing, 4/18/19, at 18). Under these circumstances, Appellant has failed to demonstrate how the proffered unauthenticated letter satisfied his burden to prove Ms. Swanger was ready and willing to testify on Appellant's behalf, and that the absence of such testimony prejudiced Appellant and denied him a fair trial. ***See Cox, supra***. Moreover, trial counsel's testimony makes clear he had a reasonable basis for declining to call Ms. Swanger as a witness. ***See Pierce, supra***. For these reasons, Appellant's first claim of trial counsel's ineffectiveness fails.

For purposes of disposition, we combine Appellant's second and third issues as they are related. In his second issue, Appellant argues his co-defendant, Ms. Kiernan, initially proceeded to a joint trial with Appellant. Appellant asserts that shortly after jury selection, but before trial began, Ms. Kiernan pled guilty. Consequently, Appellant proceeded to trial alone. Appellant acknowledges that the court instructed the jury not to concern itself with Ms. Kiernan's absence. Nevertheless, Appellant claims there is "good reason to suspect that the jury would have concluded that the sudden absence of his co-defendant and paramour was the result of a guilty plea." (Appellant's Brief at 14). Appellant emphasizes that on the first day of trial, a local newspaper published an article showing pictures of Appellant and Ms. Kiernan side-by-side and indicating that Ms. Kiernan had entered a guilty plea in this

matter while Appellant elected to go to trial. Appellant contends it is "not a far stretch" to reach the conclusion that the jury discovered Ms. Kiernan had pled guilty.

Appellant insists trial counsel should have requested a mistrial after Ms. Kiernan entered her guilty plea so that Appellant could have selected another jury. Appellant avers counsel had no reasonable basis for failing to request a mistrial where it would not have significantly delayed the proceedings because all that was required was a new jury panel. Appellant emphasizes he was prejudiced by counsel's error because he had to share his peremptory challenges with Ms. Kiernan. Appellant proclaims that Ms. Kiernan's entry of a guilty plea destroyed Appellant's presumption of innocence.

Relatedly, in his third issue, Appellant argues trial counsel should have asked the court to issue a more appropriate cautionary instruction rather than the court's general instruction for the jury not to concern itself with Ms. Kiernan's absence from trial. Appellant further asserts counsel should have asked the court to *voir dire* the jury after Ms. Kiernan's guilty plea to uncover whether any jurors were aware of her plea. Appellant submits that "it is very reasonable that the jury was aware of [Ms. Kiernan's] guilty plea and that influenced their decision." (*Id.* at 19). For these reasons, Appellant concludes trial counsel was ineffective and this Court must grant appropriate relief. We disagree.

Initially, we note that Appellant cites only general law concerning when

the remedy of a mistrial is appropriate, and he provides no legal authority to support his claim that a mistrial is appropriate where one co-defendant pleads guilty after jury selection in the case. On this basis, we could deem Appellant's second issue waived. **See Commonwealth v. Miller**, 212 A.3d 1114 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 221 A.3d 643 (2019) (explaining general principle that this Court can deem issue waived on appeal where appellant fails to properly develop issue or cite legal authority to support contention in his appellate brief).

In support of his third issue, Appellant relies on **Commonwealth v. Brado**, 470 Pa. 306, 368 A.2d 643 (1977) and **Commonwealth v. Kirkpatrick**, 386 A.2d 602 (Pa.Super. 1978). In **Brado**, the defendant was charged with murder, voluntary manslaughter, and related offenses, in connection with his shooting of victim, which occurred while the defendant was under the influence of alcohol and controlled substances. On the morning of the defendant's jury selection, a local newspaper published an editorial entitled "Drunkenness As a Defense," which criticized a then-recent Supreme Court decision and stated that, as a result of that judicial decision, "by claiming drunkenness one may be able to escape punishment for premeditated murder, robbery, burglary and rape." **Brado, supra** at 309, 368 A.2d at 644.

When confronted with the newspaper article, trial counsel moved for a continuance, which the court denied. The court conducted *voir dire* of the jurors to see if any jurors had read the article **and several admitted having**

**done so**, but those jurors said they could still decide the defendant's guilt or innocence based on the evidence presented at trial. *Id.* at 310, 368 A.2d at 644. The defendant raised a due process violation on appeal, and our Supreme Court reversed his manslaughter conviction and remanded for a new trial. In so doing, the Court stated: "The probability that the jurors would be affected by the article and direct their anger against the defendant, who presented that very defense the day the [article was] published, was so high that the article must be deemed inherently prejudicial to the defendant[.]" *Id.* at 311, 368 A.2d at 645.

In **Kirkpatrick, supra**, the appellant challenged the trial court's refusal to *voir dire* the jury after a radio broadcast on the day trial was set to begin revealed that the appellant's co-defendant had pled guilty in the case. Although trial counsel asked the court for a continuance and to *voir dire* the jurors to determine if any had heard the broadcast, the court denied both requests. Relying on **Brado**, this Court concluded that the trial court's refusal to *voir dire* the jurors amounted to an abuse of discretion. Consequently, this Court remanded for a new trial.

Instantly, on direct appeal, Appellant claimed, *inter alia*, (1) the trial court committed an error of law in concluding the jury pool was not tainted by allowing Ms. Kiernan to plead guilty without providing a cautionary instruction to the jury or by selecting a new jury; and (2) the trial court erred by concluding that trial counsel was required to request a specific cautionary

instruction. ***See Bernal, supra*** at 4. In analyzing these claims, this Court

stated:

> [Appellant's] first two claims involve the trial court's failure to give the jury a cautionary instruction regarding his co-defendant's guilty plea. When jury selection began, [Appellant] and Kiernan were slated to be tried together as co-defendants, and prospective jurors were informed of this fact. However, after the jury was empaneled, but before the commencement of trial, Kiernan entered a guilty plea. Thus, when the jury returned for trial, [Appellant] was the sole remaining defendant. [Appellant] asserts that Kiernan's absence caused the jury to improperly infer that "if she pled guilty to some offenses, ... [Appellant] must have also committed the same offenses." Brief of Appellant, at 9. We conclude that this claim is both waived and meritless.
>
> *       *       *
>
> Here, the following exchange took place just prior to the swearing of the jury panel as trial commenced:
>
> > THE COURT: And the other thing is, of course, you'll notice we have only one Defendant and you should not concern yourself about that. I might say to you your work has been made lighter. You're trying only one case, not two.
> >
> > Any reason why this jury should not be sworn?
> >
> > [COUNSEL FOR THE COMMONWEALTH]: No, Your Honor.
> >
> > THE COURT: [Defense counsel]?
> >
> > [COUNSEL FOR APPELLANT]: None, Your Honor.
> >
> > (Jury panel was sworn.)
>
> N.T. Trial, 9/8/15, at 7.
>
> [Appellant's] counsel made no request either to dismiss the

- 13 -

jury or for a further cautionary instruction. Although he asserts that counsel was not required to request a cautionary instruction and that the trial court was obliged to issue such a charge *sua sponte*, [Appellant] overlooks our Supreme Court's decision in **Commonwealth v. Boyer**, 891 A.2d 1265 (Pa. 2005), in which the Court found an identical claim waived for failure to preserve it with a request for a cautionary instruction. Accordingly, [Appellant's] claim is waived.

Even if it were not waived, [Appellant's] claim would garner him no relief. **[Appellant] has failed to demonstrate that he was prejudiced by the trial court's actions. First, the jury was completely unaware that Kiernan was absent because she had entered a guilty plea, and she was not called as a witness by either party. Second, the trial court did, in fact, instruct the jury not to concern itself with the reasons for Kiernan's absence**. *See* N.T. Trial, 9/8/15, at 7. Accordingly, [Appellant] is not entitled to relief.

**Bernal, supra** at 4-7 (emphasis added).

Additionally, at the PCRA hearing, trial counsel explained that the trial court expressly informed the jurors not to look at any media coverage. Trial counsel stated: "I don't have any evidence that they did[;] I know they were instructed not to, so I have to assume they followed those instructions[.]" (N.T. PCRA Hearing at 29-30).

Unlike the facts at issue in **Brado** and **Kirkpatrick**, the record in this case makes clear that the court (1) told the jury prior to publication of the newspaper article at issue not to view any media coverage concerning this case; and (2) informed the jury not to concern itself with Ms. Kiernan's

- 14 -

absence from trial.[2]  Under these circumstances, and for the reasons stated in this Court's decision on direct appeal, Appellant is not entitled to relief on his second and third issues on appeal.  ***See Kimball, supra***.

In his fourth issue, Appellant argues trial counsel failed to object to multiple instances of hearsay.  Specifically, Appellant challenges: (a) Agent Sinisi's testimony that Officer Ammerman stated that he received an anonymous complaint that Appellant moved into Huntingdon County in 2012 and was moving large quantities of heroin from New York City; (b) Agent Sinisi's testimony that police had intelligence that Nolan Mill's heroin source was Appellant; (c) Agent Sinisi's testimony regarding what a confidential informant had told him about his purchase of narcotics, where the informant purchased two bags of heroin from Nolan Mills and handed him $50.00 in exchange; (d) Agent Sinisi's testimony regarding what occurred in a controlled buy in which Agent Sinisi was not a participant but learned about after-the-fact; (e) Agent Sinisi's testimony that David Steel would get his heroin from Beth Harms, and Mr. Steel knew that Appellant was Beth Harm's heroin source; and (f) the introduction of phone calls where Agent Sinisi explained to the jury "coded language" without the defense first laying a proper foundation regarding Agent Sinisi's qualifications to testify about phone calls that were

---

[2] ***Brado*** and ***Kirkpatrick*** also were not decided in the context of a claim of trial counsel's ineffectiveness, so the relevant three-prong ineffectiveness test was not at issue in those cases.

"intercepted" or "consensualized and/or intercepted."

Appellant complains trial counsel was ineffective for failing to object in each of these instances based on hearsay. Appellant further contends admission of such testimony violated his rights under the Confrontation Clause. Appellant insists trial counsel had no reasonable basis for failing to lodge appropriate objections, or to request a cautionary jury instruction that there was a limited purpose for admission of the hearsay testimony (*i.e.*, to show its effect on the listener). Appellant maintains counsel's errors prejudiced Appellant because the above-listed testimony made him look like a bigger drug dealer than he was. Appellant complains the agent's testimony also implied that Appellant was involved in narcotics transactions which could not have been proven otherwise because Appellant maintained he was not in Huntingdon County during the relevant timeframe. Appellant concludes trial counsel was ineffective, and this Court must grant him appropriate relief. We disagree.

Preliminarily:

> [W]e observe generally that issues not raised in a Rule 1925(b) statement will be deemed waived for review. An appellant's concise statement must properly specify the error to be addressed on appeal. In other words, the Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal. A concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all. The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver.

- 16 -

*Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (internal citations and quotation marks omitted).

Instantly, in his Rule 1925(b) statement raising this issue, Appellant claimed only that trial counsel was ineffective for failing to object to multiple occasions of hearsay testimony. Appellant did not specify in his Rule 1925(b) statement any of the precise claims of error he advances on appeal. Additionally, Appellant did not mention any violation of the Confrontation Clause in his Rule 1925(b) statement. Although Appellant stated in the introduction of the Rule 1925(b) statement that he intended to raise on appeal the same issues presented in his PCRA petition, this Court does not condone the incorporation by reference of other documents in a Rule 1925(b) statement. *See Commonwealth v. Dodge*, 859 A.2d 771, 774 (Pa.Super. 2004), *vacated on other grounds*, 594 Pa. 345, 935 A.2d 1290 (2007).[3] *See also Commonwealth v. Smith*, 955 A.2d 391, 393 n.5 (Pa.Super. 2008) (stating: "We do not condone the Commonwealth's incorporation by reference

---

[3] In *Dodge*, this Court declined to find waiver of the sentencing issues raised in the Rule 1925(b) statement because the arguments raised were largely the same as those raised in the appellant's post-sentence motions, and the trial court understood the issues raised with regard to his sentence and referred this Court to portions of the record in which the court addressed the appellant's arguments. *See id.* Thus, the deficient Rule 1925(b) statement did not hamper our review of the sentencing issues. *Id.*

of its motion for reconsideration. A Rule 1925(b) statement should include a concise statement of each issue to be raised on appeal").

Further, at the PCRA hearing, Appellant questioned trial counsel only generally about why trial counsel did not object to the instances of hearsay set forth in the amended PCRA petition.[4] Appellant did not ask trial counsel specific questions concerning each instance of hearsay Appellant raised in the amended PCRA petition and sets forth on appeal. Trial counsel testified that he had objected to leading statements and hearsay a number of times, and explained that Agent Sinisi, as the investigating officer in the case, would have been afforded some leeway in discussing the background of the case and how the investigation progressed. (*See* PCRA Hearing at 19-20). Although trial counsel conceded that he could have objected more often, he stated: "I don't think [the objections] would have been significant" or "critical…to the overall picture of things." (*Id.* at 26).

In rejecting this ineffectiveness claim, the PCRA court stated: "The difficulty with the claim is that it is not fact specific, a failure that makes impossible an analysis of whether the admission of the alleged hearsay evidence was prejudicial." (Opinion in Support of Order Denying Relief, filed January 21, 2020, at 8). Based on Appellant's vague Rule 1925(b) statement, the general questions posed to trial counsel at the PCRA hearing, and the

---

[4] The amended PCRA petition preserves the claims of error raised on appeal.

PCRA court's inability to analyze Appellant's discrete claims of error, we deem Appellant's fourth issue on appeal waived. *See Hansley, supra*.

In his fifth issue, Appellant argues trial counsel failed to request standard jury instruction 4.06 (certain testimony subject to special scrutiny) related to how the jury should evaluate testimony from Beth Harms, Aaron Dimoff, and David Steel. Appellant claims trial counsel also failed to request standard jury instruction 4.01 (corrupt and polluted source instruction regarding accomplices) as it relates to those same witnesses. Appellant asserts these witnesses were arrested and charged with Appellant, and they admitted selling narcotics with Appellant and at his direction. Appellant maintains trial counsel had no reasonable basis for failing to request these jury instructions, and that he suffered prejudice as a result. Appellant concludes counsel was ineffective and this Court must grant appropriate relief. We disagree.

When reviewing a challenge to a jury instruction:

> [W]e must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa.Super. 2008), *appeal denied*, 606 Pa. 644, 992 A.2d 885 (2010) (internal citation omitted).

> A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to

- 19 -

mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Id.* Additionally, "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only."

***Commonwealth v. Eichinger***, 631 Pa. 138, 178, 108 A.3d 821, 845 (2014).

Pennsylvania Suggested Standard Criminal Jury Instruction 4.01 provides as follows:

### 4.01    ACCOMPLICE TESTIMONY

\* \* \*

3. These are the special rules that apply to accomplice testimony:

First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source.

Second, you should examine the testimony of an accomplice closely and accept it only with care and caution.

Third, you should consider whether the testimony of an accomplice is supported, in whole or in part, by other evidence. Accomplice testimony is more dependable if supported by independent evidence. However, even if there is no independent supporting evidence, you may still find the defendant guilty solely on the basis of an accomplice's testimony if, after using the special rules I just told you about, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and the defendant is guilty.

Pa.SSJI (Crim) § 4.01.

- 20 -

Pennsylvania Suggested Standard Criminal Jury Instruction 4.06 provides as follows:

**4.06   CERTAIN TESTIMONY SUBJECT TO SPECIAL SCRUTINY**

You should examine closely and carefully and receive with caution the testimony of [name of witness] if you find that he or she…[give specific situation].

Pa.SSJI (Crim) § 4.06.  "This instruction may be appropriate when the court wishes to caution the jury about testimony that falls into a category subject to special scrutiny, *e.g.*, … paid informer….  It should not be used with a category for which this manual gives a more specific instruction, *e.g.*, accomplice testimony."  ***Id.*** at Subcommittee Note.

"The justification for the [corrupt source] instruction is that an accomplice witness will inculpate others out of a reasonable expectation of leniency."  ***Commonwealth v. Manchas***, 633 A.2d 618, 627 (Pa.Super. 1993), *appeal denied*, 539 Pa. 647, 651 A.2d 535 (1994) (internal citation omitted).  "An accomplice charge is necessitated not only when the evidence requires an inference that the witness was an accomplice, but also when it permits that inference."  ***Id.***

In ***Commonwealth v. Smith***, 609 Pa. 605, 17 A.3d 873 (2011), *cert. denied*, 567 U.S. 937, 133 S.Ct. 24, 183 L.Ed.2d 680 (2012), the trial court refused trial counsel's request to issue the Section 4.01 jury charge.  In his PCRA petition, the appellant argued appellate counsel was ineffective for failing to challenge on appeal the trial court's failure to give the requested

instruction. In reviewing the claim, our Supreme Court explained that although the trial court did not issue the requested instruction under Section 4.01, the court instructed the jury that witnesses Green and Rucker were co-conspirators allegedly in a conspiracy with the appellant who testified on behalf of the Commonwealth, and the jury should bear this in mind during their deliberations when assessing their credibility. *Id.* at 662, 17 A.3d at 906.

The trial court also instructed the jury to weigh, analyze, and judge the credibility and reliability of the witnesses; to consider whether a witness had a motive to lie; to consider whether bias or prejudice entered into a witness's testimony; and to consider whether the witness had an interest in the outcome of trial that would color that witness's testimony. *Id.* at 662, 17 A.3d at 906-07. Further, the jury heard that both Green and Rucker agreed to plead guilty to lesser offenses in exchange for their testimony against the appellant. Given the totality of the jury charge and the evidence produced regarding Green and Rucker's interest in testifying for the Commonwealth, the Supreme Court held that the appellant could not establish prejudice to prevail on his ineffectiveness claim. *See id.* at 663, 17 A.3d at 907.

Additionally, in **Commonwealth v. Slyman**, 483 A.2d 519 (Pa.Super. 1984), the appellant challenged the trial court's failure to instruct the jury that it should regard with heightened scrutiny the testimony of the Commonwealth's informant, who purchased cocaine from the appellant on

behalf of an undercover agent. The appellant raised a related claim of trial counsel's ineffectiveness in failing to request the "corrupt source" standard jury instruction. In rejecting the appellant's claims, this Court explained that "[w]e have held that a trial court may properly refuse to grant a defendant's point for charge, which posits that police officers and informants have an interest in the outcome of the case, where the court provides a general instruction that the jury must consider in its deliberations the potential bias or interest with which any witness may have testified." *Id.* at 529. Because the trial court had issued a general instruction that adequately covered the matter of witness credibility,[5] this Court held that the trial court did not err in providing a more detailed jury instruction, and trial counsel was not ineffective for failing to request the "corrupt source" jury instruction. *Id.*

Instantly, at the PCRA hearing, trial counsel acknowledged in hindsight

_____

[5] The trial court's instruction stated:

> You, members of the jury, must determine what witnesses you will believe in order to determine what facts you find to be true, and we speak of that as passing upon the credibility of the witnesses, determining what credit their testimony is entitled to. In determining that, you take into consideration the means of knowledge of the matters to which they have testified, their appearance and their manner upon the stand when testifying, any interest that the witnesses may have in the outcome of the case, and considering all of these matters and using your own good judgment and experience, you will determine what witnesses you will believe and, therefore, what facts you find to be true.

*Id.*

- 23 -

that it would have been "better" if he had requested the standard jury instructions under Sections 4.01 and 4.06. (N.T. PCRA Hearing at 21). Nevertheless, trial counsel stated that a number of judges do not like the "corrupt and polluted source" instruction and will not give it. Further, even though he did not request, and the court did not give, the instructions under Sections 4.01 and 4.06, trial counsel opined that the court's jury instructions viewed in totality adequately covered the relevant concepts of those suggested instructions. (*Id.*) Trial counsel elaborated that "in reviewing the jury charge [it] certainly seemed to be covered," and trial counsel assumed "the [jurors] considered those points when they were weighing their decision." (*Id.* at 28).

In rejecting Appellant's ineffectiveness claim, the PCRA court reasoned:

> First, we point out that the jury in this case was instructed on two occasions with respect to the credibility of witnesses. In our opening instructions we told the jury it was their duty to judge the credibility of every witness and we gave them factors they might consider in performing that duty. One of the factors we instructed the jury to consider was whether a witness had an interest or anything to gain or lose in the outcome of the trial. We again charged the jury in our closing instructions with respect to the credibility of witnesses. We used as our guide [Pa.SSJI] (Crim) § 4.17.
>
> Next, the flagship of the Commonwealth's case against [Appellant] was the extensive (3 hours) statement [Appellant] gave law enforcement three weeks after his arrest. [Appellant] requested the opportunity to speak and he was represented by counsel during the process. The remainder of the Commonwealth's case against [Appellant] was corroborative of what he told law enforcement. In his statement, he provided the names of his accomplices and all but one testified at trial and subsequently entered pleas

of guilty to the drug offenses. Thus, in this case, [Appellant] identified his accomplices to law enforcement, and all but one confirmed the relationship in his or her testimony. There was no issue of accomplices attempting to inculpate [Appellant] since he and they each admitted their relationship as well as their criminal enterprise.

Accordingly, [Appellant] has failed to demonstrate prejudice as a consequence of his claim of ineffectiveness based on the failure of trial counsel to request a charge on accomplice testimony.

(Opinion in Support of Order Denying Relief at 10-11). The record supports the PCRA court's analysis.

Our review of the record shows that the jury instruction, viewed as a whole, was sufficient to instruct the jury regarding how to assess the credibility of the witnesses in this case. Consequently, Appellant cannot establish trial counsel's ineffectiveness in failing to request the "corrupt source" jury instruction under Section 4.01. **See Smith, supra**; **Slyman, supra**. Because the standard jury instruction under Section 4.06 should not be used where a more specific instruction exists regarding accomplice testimony, we cannot say that trial counsel was ineffective in failing to request the jury instruction under Section 4.06. **See** Pa.SSJI (Crim) § 4.01, Subcommittee Note. Therefore, Appellant's fifth issue merits no relief.

In his sixth issue, Appellant argues that trial counsel failed to conduct an adequate cross-examination of Aaron Dimoff as it related to his bias in providing testimony for the Commonwealth. Appellant claims that trial counsel attempted to cross-examine Mr. Dimoff about his arrest in this case

and whether Mr. Dimoff expected to receive favorable treatment on his charges in exchange for his testimony against Appellant. In response, Mr. Dimoff gave equivocal answers, claiming uncertainty regarding whether he was charged in connection with this case. Appellant insists trial counsel should have questioned Mr. Dimoff further to obtain truthful answers and to explore Mr. Dimoff's potential bias.[6] Appellant concludes trial counsel was ineffective in his cross-examination of Mr. Dimoff, and this Court must grant appropriate relief. We disagree.

Preliminarily, "a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 783 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 744, 123 A.3d 331 (2015) (internal citation omitted). "[O]ur Supreme Court has cautioned against finding no reasonable basis for trial counsel's actions in the absence of supporting evidence. The fact that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure to raise a plausible objection does

---

[6] To the extent Appellant complains the prosecutor failed to correct Mr. Dimoff's equivocal testimony concerning his arrest in this case, that claim is waived as it could have been presented on direct appeal. *See* 42 Pa.C.S.A. § 9543(a)(3) (stating that to be eligible for relief under PCRA, petitioner must plead and prove allegation of error has not been previously litigated or waived); 42 Pa.C.S.A. § 9544(b) (stating that for purposes of this subchapter, issue is waived if petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in prior state post-conviction proceeding).

- 26 -

not necessarily prove that an objectively reasonable basis was lacking." **Id.** at 784 (internal citation omitted). **See also Commonwealth v. Weiss**, 622 Pa. 663, 81 A.3d 767 (2013) (collecting cases and explaining that because appellant was given evidentiary hearing and did not elicit from trial counsel his reasons for failing to request cautionary charge, and because decision whether to seek jury instruction implicates matter of trial strategy, record before us provided no grounds for deeming counsel ineffective for failing to request instruction).

Instantly, at the PCRA hearing, Appellant did not ask trial counsel any questions concerning his cross-examination of Mr. Dimoff. As the court afforded Appellant the opportunity for an evidentiary hearing, that was the appropriate time for Appellant to inquire from trial counsel about whether he had a reasonable basis in failing to question Mr. Dimoff any further regarding his arrest in this case. **See Weiss, supra**. Based on Appellant's failure to ask the necessary questions at the PCRA hearing, Appellant cannot establish that trial counsel lacked a reasonable basis for his actions. **See id.**; **Reyes-Rodriguez, supra**. Thus, Appellant's sixth issue merits no relief.

In his final issue on appeal, Appellant argues appellate counsel was ineffective for failing to comply with Pa.R.A.P. 2119(f). Specifically, Appellant complains that appellate counsel raised a challenge to the discretionary aspects of sentencing on direct appeal, but that this Court deemed the issue waived for Appellant's failure to include the required Rule 2119(f) statement

in his brief. Appellant claims the trial court: (1) imposed consecutive sentences for each PWID count, which was inappropriate where the Commonwealth charged Appellant with four separate acts of PWID instead of only one; (2) miscalculated Appellant's prior record score, which should have been a three instead of a four; (3) improperly determined the relevant drug quantities, which impacted Appellant's offense gravity score ("OGS"); and (4) failed to consider Appellant's rehabilitative needs when fashioning its sentence. Appellant insists he would have succeeded on these meritorious sentencing claims but for appellate counsel's failure to include the Rule 2119(f) statement. Appellant concludes appellate counsel was ineffective and this Court must grant appropriate relief. We disagree.

Initially, we observe that Appellant seems to misinterpret the sentencing issues raised on direct appeal. On appeal, the **sole** challenge to the discretionary aspects of sentencing raised concerned calculation of Appellant's OGS. Specifically, Appellant claimed "that the trial court erred in assigning an [OGS] of ten to each count of PWID, when the evidence presented at sentencing failed to [establish] that he possessed between 50 and 100 grams of heroin in the time-frame underlying each count." *Bernal, supra* at 12. Although this Court concluded that Appellant filed a timely post-sentence motion raising this claim, followed by a timely notice of appeal, and presented a substantial question for review, this Court deemed Appellant's sentencing challenge waived for failure to include a Rule 2119(f) statement. *Id.* at 12-

- 28 -

13. Because the Commonwealth objected to omission of the Rule 2119(f) statement, this Court declined to review the merits of Appellant's claim.

Appellant now suggests on appeal that he would have succeeded on his various sentencing challenges but for appellate counsel's failure to include the Rule 2119(f) statement. Nevertheless, appellate counsel did not raise on direct appeal sentencing challenges related to the court's imposition of consecutive sentences in light of the Commonwealth's separate charges,[7] miscalculation of Appellant's prior record score, or failure to consider Appellant's rehabilitative needs. Notably, Appellant does not challenge appellate counsel's ineffectiveness in failing to advance these claims on direct appeal.[8] Rather, Appellant bases his ineffectiveness claim on appellate counsel's failure to include the required Rule 2119(f) statement. Thus, we will

_____

[7] Appellant raised a similar but distinct issue on direct appeal regarding the Commonwealth's filing of separate PWID charges. Specifically, Appellant challenged the Commonwealth's prosecutorial discretion in charging Appellant with four separate PWID charges for conduct that continued over an eighteen-month timeframe rather than filing a single charge. Appellant complained this charging decision ultimately led to Appellant's receipt of an OGS of 10 on four separate counts, instead of an OGS of 11 at only one count. Initially, this Court concluded the claim was waived for failure to cite relevant supporting authority. *See id.* at 7-8. Moreover, this Court decided the issue lacked merit based on the prosecutor's considerable discretion in deciding how to bring charges, particularly where Appellant was essentially seeking a "volume discount" for a year and a half of criminal activity. *Id.* at 8.

[8] To the extent Appellant's argument could be construed as challenging appellate counsel's ineffectiveness in failing to advance these claims on direct appeal, Appellant's Rule 1925(b) did not preserve such a challenge, as it states only that appellate counsel was ineffective in failing to comply with Rule 2119(f). *See Hansley, supra*.

review only whether Appellant would have succeeded on direct appeal on his challenge regarding his OGS had appellate counsel complied with Rule 2119(f).

In denying relief on this claim, the PCRA court stated:

> By way of background, the Commonwealth in its Information charged [Appellant] with four counts of [PWID]. Each count represented a four month period beginning in November, 2012. In each of the four counts it was alleged that during that four month period [Appellant] possessed with intent to deliver 100 to 1,000 grams of heroin. In this regard, it should be noted that the jury acquitted [Appellant] of Count 2, the first of the four PWID counts, which covered the period from November, 2012 through March, 2013.
>
> This court held a hearing at sentencing since there was disagreement with respect to the proper [OGS] to be assigned to the three counts of PWID as well as the count of conspiracy. The focus of the hearing was the manner employed by the Commonwealth in determining the weight of the drugs charged in each PWID count as well as the count charging conspiracy. Weight was significant since…the OGS for PWID of between 100 and 1,000 grams of heroin is 11 while the OGS for PWID of between 50 and less than 100 grams is 10.
>
> *    *    *
>
> [Based on the evidence presented at the sentencing hearing], and over the strong objection of the Commonwealth, we determined that 10 was the appropriate OGS since the evidence at trial indicated that [Appellant] was addicted to heroin and was using some of his product for personal use. Trial counsel agreed that 10 was fair under all the circumstances of the case.

(Opinion in Support of Order Denying Relief at 11-12) (internal citations omitted). The PCRA court emphasized that Appellant "won the argument with respect to the proper [OGS]" and the court did not know why Appellant was

claiming the evidence produced at the sentencing hearing was insufficient to support the OGS of 10. (*See id.* at 14-15).

Here, our review of the sentencing transcript supports the PCRA court's analysis. Appellant does not specify on appeal why the court's use of an OGS of 10 was improper in this case.[9] Consequently, Appellant cannot demonstrate that he suffered prejudice as a result of appellate counsel's omission of the Rule 2119(f) statement. *See Chambers, supra*. Therefore, Appellant's final claim merits no relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/21/2021

---

[9] Appellant's reference on appeal to more specific arguments made in his post-sentence motions is insufficient to satisfy Appellant's obligation to develop his issues in his appellate brief. *See* Pa.R.A.P. 2119(a) (discussing argument section of appellate brief); *Smith, supra*; *Dodge, supra*.