J-S08025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYHIR KHALIL WATERS | : | |
| | : | |
| Appellant | : | No. 1159 MDA 2021 |

Appeal from the PCRA Order Entered August 7, 2021
In the Court of Common Pleas of Tioga County Criminal Division at
No(s):  CP-59-CR-0000305-2019

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

DISSENTING MEMORANDUM BY BOWES, J.:　　　**FILED:  JUNE 28, 2022**

I respectfully dissent.  Since there is no dispute that the sentencing court misapprehended a significant aspect of the crime committed by Appellant and explicitly relied upon that misapprehension in handing down its sentence, I would conclude that counsel rendered ineffective assistance by: (1) failing to object to the inaccuracy during Appellant's sentencing; and (2) declining to request resentencing to correct the factual inaccuracy which occurred.  Therefore, I would reverse the order of the PCRA court, vacate Appellant's judgment of sentence, and remand for resentencing.

With all due respect, I find that the Majority's discussion has minimized the seriousness of the trial court's misinterpretation of the facts in this case. Accordingly, I think it is important to review the sentencing court's comments in the context in which they appeared.  Although Appellant pled guilty to person not to possess a firearm, at sentencing Appellant argued that the

offense was the product of his long-term abuse of narcotics and requested intermediate punishment to address his underlying issues with addiction:

> [DEFENSE COUNSEL]: Okay. So, as you, as you see, [Appellant] is a 24-year-old man. He's been using drugs since the age of 15, he had indicated. You look at his prior history, everything that he's done wrong in his life has been drug related, and that's the issue; that's the issue he's been having. . . . But for his drug use, he'd probably be a productive member of society, but instead, it keeps putting him back in. . . .
>
> [H]e has been incarcerated before, but it has not stopped him from using drugs, so I am trying to stress to you, Judge, that if we warehouse him for an extended period of time, it's not going to help him; he needs to get the help to get rid of his addiction. If you sentence him to a [s]tate [s]entence, that State Intermediate Punishment Program would be perfect for him. . . . He doesn't remember anything because he was on meth, he doesn't even remember sitting next to the gun, he doesn't remember even brandishing the gun, and . . . I think just putting him in jail is not going to be enough.
>
> THE COURT: I, I would normally buy that argument, but this is the leap that I'm having trouble making. If [Appellant] came to me and he was on a drug charge, if he was on some kind of theft, if he was on a burglary or criminal trespass, even if it was perhaps an assault, I can say, "Okay, it's drug related." [B]ut now I have this giant leap to possession of firearms, **and apparently these were pretty substantial firearms; AR, I believe means automatic rifle.**
>
> [DEFENSE COUNSEL]: **That's right**, but once again, like I said, he was using drugs that day, he was using meth the day it happened. Everything he's done in his life, every problem he's had has been drug related.
>
> THE COURT: So, you – but – that unnerves me because you're – what you're saying to me is, I've got a young man here that is on drugs to the point that he doesn't know where he's going, **but he's in possession or access of automatic rifles. That, that, that takes me to, that takes me to a land I don't want to go to.**

- 2 -

N.T. Sentencing, 5/29/20, at 4-6 (emphases added). Later in the same proceeding, the Commonwealth referenced the same erroneous information. *See id*. at 12 ("Driving down the road **with an automatic rifle in your possession**, as the facts allege, pointing it at people. We are very fortunate that this didn't end up any worse than it already did."). Ultimately, the trial court denied Appellant's request for intermediate punishment based, at least in part, upon the type of weapon it believed Appellant had possessed.

The references highlighted above refer to Appellant's undisputed possession of an AR-15. As the Supreme Court of the United States has explained, "[t]he AR-15 is the civilian version of the military's M-16 rifle, and is, unless modified, a **semiautomatic** weapon." *Staples v. U.S.*, 511 U.S. 600, 603 (1994) (emphasis added). This means that the weapon "fires only one shot with each pull of the trigger[.]" *Id*. at 602 n.1. Semiautomatic weapons like the AR-15 are distinct from "automatic" or "fully automatic" weapons, which fire "repeatedly with a single pull of the trigger" and "will automatically continue to fire until its trigger is released or the ammunition is exhausted." *Id*. Thus, the AR-15 is **not** an automatic rifle. This distinction is not merely formalistic but concerns the offensive capability and perceived character of the firearm. This is particularly so where, as here, possession of a firearm is the only criminal activity implicated in this matter.

As the Supreme Court's discussion in *Staples* evinces, semi-automatic weapons are regularly utilized by civilians while automatic weapons are

typically restricted to use by the military. **Staples**, **supra** at 603. Instantly, the sentencing court expressed concern at multiple junctures that Appellant had possessed an automatic weapon. Indeed, the court stated that his alleged possession of an automatic weapon had convinced it to deny Appellant's request for intermediate punishment. **See** N.T. Sentencing, 5/29/20, at 4-6. Accordingly, there is unanimity in that Appellant, the Commonwealth, and the PCRA court are all in agreement that the above-quoted references to automatic weapons were erroneous. **See** PCRA Court Opinion, 10/25/21, at 1 (holding the error to be harmless); Commonwealth's brief at 7 ("[A]n error in defining the firearm, an AR-15, as an 'automatic rifle' was made by both the Judge and the District Attorney and was not questioned or corrected by Defense Counsel[.]"); Appellant's brief at 4-6 (same).

Appellant has framed this issue as one addressed to the effectiveness of defense counsel in a timely PCRA petition.[1] **See** Appellant's brief at 11 ("[S]entencing counsel took no steps whatsoever to correct the court's misunderstanding or to preserve the issue for appellate review."). Accordingly, he must satisfy the three-part inquiry that Pennsylvania courts have "refined" from **Strickland v. Washington**, 466 U.S. 668 (1984) by

---

[1] It is well-established that a claim that a sentencing court has considered improper or erroneous factors in handing down a sentence does not implicate the legality of the sentence. **See Commonwealth v. Archer**, 722 A.2d 203, 210 (Pa.Super. 1998) (*en banc*) ("[I]f a sentencing court considers improper factors in imposing sentence upon a defendant, the court thereby abuses its discretion, but the sentence imposed is not rendered illegal.").

showing that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Sarvey*, 199 A.3d 436, 452 (Pa.Super. 2018). Both the PCRA court and the Majority predicate their holding upon a finding that the inaccuracy described above was "harmless." *See* PCRA Court Opinion, 10/25/21, at 1 (finding that all references to an "automatic rifle" constituted "harmless error"); Majority Memorandum at 9 ("On this record, we agree with the PCRA court's conclusion that the erroneous description of Appellant's firearm was harmless and therefore, there was no prejudice to Appellant."). I must respectfully disagree. In my opinion, Appellant has satisfied all three elements of the test for ineffectiveness.

As a general matter, "[t]here is no reason to prohibit the sentencing court from taking into consideration the facts of the crime and how those facts supported a potentially more serious sentence when the court is weighing whether to impose a standard or mitigated sentence." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009). In exercising this discretion, however, the judge must rely on "full and accurate information[.]" *Commonwealth v. Maxwell*, 421 A.2d 699, 703 (Pa.Super. 1980). Indeed, "[p]recisely because of the wide latitude afforded sentencing courts and because we recognize the court's ability to arrive at a balanced judgment when possessed of all the facts, it becomes imperative that the facts relied upon by

- 5 -

the sentencing court be **accurate.**" **Commonwealth v. Medley**, 725 A.2d 1225, 1229 (Pa.Super. 1999) (emphasis in original).

Accordingly, it is equally well-established under Pennsylvania law that it is "improper for a court to sentence pursuant to facts *de hors* the record[.]" **Commonwealth v. Griffin**, 804 A.2d 1, 17 (Pa.Super. 2002) (cleaned up). Indeed, it is well-settled that,

> prior to imposing sentence [a] sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.
>
> Nevertheless, the discretion of a sentencing judge is not unfettered; a defendant has the right to minimal safeguards to ensure that the sentencing court does not rely on factually erroneous information, and any sentence predicated on such false assumptions is inimicable [*sic*] to the concept of due process.

**Commonwealth v. Melvin**, 172 A.3d 14, 25 (Pa.Super. 20176). Accordingly, "[i]f the court relies on improper considerations or information, . . . new sentencing is required." **Commonwealth v. Cowan**, 418 A.2d 753, 753 (Pa.Super. 1980). In light of this case law, I find that Appellant's argument concerning the use of erroneous information has arguable merit.

Turning to the second element of ineffectiveness, our precedent provides that we "should not deem counsel's strategy or tactic unreasonable unless it can be concluded that an alternative not chosen offered a potential for success greater than the course actually pursued." **Commonwealth v. Koehler**, 36 A.3d 121, 132 (Pa. 2012) (cleaned up). Ordinarily, Appellant's failure to adduce testimony from trial counsel concerning this strategic choice

at the PCRA hearing would be fatal to his claim. ***Id***. at 146. Here, however, the lack of a strategic basis is "self-evident." ***Id***. Specifically, counsel not only failed to object or attempt to correct the record concerning the AR-15, he doubled down on the misapprehension by purporting to confirm the trial court's erroneous assertion that an AR-15 is an "automatic" weapon. ***See*** N.T. Sentencing, 5/29/20, at 6. Thus, counsel's failure to raise any concern appears to be the result of the same misunderstanding, *i.e.*, he also believed that an AR-15 is an "automatic" firearm. Under these circumstances, it is self-evident that defense counsel did not make a conscious choice to permit a factual inaccuracy to inform the sentence imposed upon his client. Accordingly, I would hold Appellant has also satisfied the second prong of ineffectiveness. ***See***, ***e.g.***, ***Commonwealth v. Kennedy***, 323 A.2d 384, 386 (Pa.Super. 1974) ("If . . . counsel's course of action is unmotivated by any reasonable tactical choice, the defendant . . . may, in a collateral proceeding, obtain relief on the basis of ineffective assistance of counsel." (cleaned up)).

As the Majority has aptly noted, the test for prejudice in this context is not insubstantial. ***See Commonwealth v. Spotz***, 84 A.3d 294, 315 (Pa. 2014) (opining that prejudice in the context of ineffectiveness "requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings"). Even with such a standard in mind, I believe that these circumstances are indicative of prejudice. I find substantial guidance from our case law addressing the importance of the accuracy of

information relied upon by the trial court in imposing criminal sentences. This Court has held that "it is sufficient to render a sentence invalid if it reasonably appears from the record that the sentencing court relied in whole **or in part** upon an erroneous consideration." ***Commonwealth v. Kerstetter***, 580 A.2d 1134, 1136 (Pa.Super. 1990) (emphasis added). Thus, in deciding whether a trial judge considered only permissible factors in sentencing a defendant, this Court has observed as follows:

> A sentence is invalid if the record discloses that the sentencing court may have relied in whole **or in part** upon an impermissible consideration. This is so because the court violates the defendant's right to due process if, in deciding upon the sentence, it considers unreliable information, or information affecting the court's impartiality, or information that it is otherwise unfair to hold against the defendant.

***Commonwealth v. Downing***, 990 A.2d 788, 793 (Pa.Super. 2010) (emphasis added). In the instant case, it is beyond cavil that the trial court, in part, relied upon the erroneous categorization of Appellant's firearm in imposing his sentence. ***See*** N.T. Sentencing, 5/29/20, at 4-6.

The Majority recites the other valid considerations of the sentencing court in great detail and accuracy. ***See*** Majority Memorandum at 6-8. However, to my mind, the fact that the trial court also considered permissible and accurate facts does not obviate the underlying error in this case. As our Supreme Court has aptly observed, "a sentence based in part on an impermissible consideration is not made proper simply because the sentencing

judge considers other permissible factors as well." ***Commonwealth v. Bethea***, 379 A.2d 102, 106 (Pa. 1977). Under these circumstances,

> it is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of a sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.

***Townsend v. Burke***, 334 U.S. 736, 741 (1948).

Here, Appellant was entitled to be sentenced according to accurate facts and the considerations that stemmed therefrom. There is no question that the sentencing court misapprehended the facts and based Appellant's sentence, in part, upon that misunderstanding. As such, I would hold that he suffered prejudice as a result of this deprivation of due process. Had defense counsel acted appropriately, the record would have been corrected and the sentencing court would have been forced to re-evaluate its initial conclusions regarding the nature of the weapon.[2] To my mind, such an approach would have presented a greater probability of success than the tact actually pursued by counsel, *i.e.*, erroneously confirming the court's factual error. Thus, Appellant has also established prejudice. Since this due process violation strikes at the heart of Appellant's sentencing, I cannot deem it to be harmless.

---

[2] To the extent that the PCRA court speculates concerning the motivations of the sentencing court in this case, I note that this case has been assigned to a different jurist during these collateral proceedings. Accordingly, the PCRA court in this matter is unable to directly speak to the sentencing court's motivations, or what sentence might have been imposed in the absence of the factual error described at length above.

- 9 -

Based on the foregoing, I would reverse the order of the PCRA court, vacate Appellant's sentencing order, and remand for resentencing. Accordingly, I respectfully dissent.